553 P.2d 1265

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Daniel Levy DeSANTOS, aka Douglas W. Williams, Defendant-Appellant.**

**No. 10478.**

Supreme Court of New Mexico.

June 29, 1976.

See also 89 N.M. 351, 552 P.2d 787.

Chester H. Walter, Jr., Chief Public Defender, Bruce L. Herr, Appellate Defender, Lynn Pickard, Asst. Appellate Defender, Santa Fe, for appellant.

Toney Anaya, Atty. Gen., F. Scott MacGillivray, Asst. Atty. Gen., Santa Fe, for appellee.

OPINION

STEPHENSON, Justice.

The defendant, Daniel Levy DeSantos, appeals from a conviction of first degree murder of Glennie McDonald in Silver City, New Mexico. DeSantos was charged by information on November 22, 1974, with an "open" charge [1] of first degree murder and convicted after a trial by jury. We reverse the conviction for improper instruction of the jury and grant the defendant a new trial.

DeSantos raises the unconstitutionality of the New Mexico death penalty statute under the due process clauses and cruel and unusual clauses of the federal and state constitutions. The statute has since been upheld on these grounds in *State ex rel. Serna v. Hodges*, 89 N.M. 351, 552 P.2d 787 (1976). The constitutionality of the death penalty and murder statutes under Article IV, §§ 16 and 18 of the New Mexico Constitution, also raised by the defendant, was considered and upheld in *State v. Trivitt*, 89 N.M. 162, 548 P.2d 442 (1976). The defendant alleges error by the trial court in the admission of photographs of the body of the victim into evidence. We hold that the photographs were relevant and there was no abuse of discretion in their admission. *State v. Gardner*, 85 N.M. 104, 509 P.2d 871, cert. denied, 414 U.S. 851, 94 S.Ct. 145, 38 L. Ed.2d 100 (1973); *State v. Victorian*, 84 N.M. 491, 505 P.2d 436 (1973). Finally, comments by the prosecutor, references to illicit sexual relations, and inadequate assistance of counsel are raised as reversible errors. These contentions are without merit.

The only remaining issue is the sufficiency of the evidence for the conviction and instruction of the jury on theories of which there was no evidence. We must view the evidence in the light most favorable to the State, resolving all conflicts and indulging all permissible inferences in favor of the conviction. *State v. Lucero*, 88 N.M. 441, 541 P.2d 430 (1975); *State v. Vigil*, 87 N.M. 345, 533 P.2d 578 (1975).

The judge instructed the jury on four separate theories of first degree murder: (1) willful, deliberate and premeditated murder; [2] (2) felony murder; [3] (3) murder "by any act greatly dangerous to the lives of others, indicating a depraved mind regardless of human life;" [4] and (4) murder "from a deliberate and premeditated design unlawfully and maliciously to effect the death of any human being." [5]

With respect to the instruction on willful, deliberate and premeditated murder there is sufficient evidence to sustain the instruction. DeSantos knew Glennie McDonald, the victim. On the night of the murder, October 31, 1973, DeSantos asked the wife of a friend at the Dairy Queen if the victim was going to a local nightclub and if he could borrow a car to go there. Earlier that evening DeSantos and two friends had bought some bottles of liquor and stolen a few clothes as a Halloween prank. A label from one of these bottles and some of these clothes were found with the body. After ten o'clock on October 31st, the defendant has no alibi that could be corroborated. Glennie McDonald was seen at the Dairy Queen around nine o'clock about the time that the defendant was present. DeSantos himself testified that he found the body in his house, zipped it into one of his sleeping bags, removed the murder weapon, a cement block, and drove the victim in her car to an abandoned area outside of Silver City. Hairs which were similar to the defendant's, which had apparently been forcibly removed were found with the body. DeSantos left town one

---

1. Under an "open" charge of murder, all five subsections of § 40A–2–1(A), N.M.S.A.1953 are alleged in the indictment or information.

2. Section 40A–2–1(A)(1), N.M.S.A.1953.

3. Section 40A–2–1(A)(3), N.M.S.A.1953.

4. Section 40A–2–1(A)(4), N.M.S.A.1953.

5. Section 40A–2–1(A)(5), N.M.S.A.1953.

and a half days after the murder in a car he had stolen from a friend and was not apprehended until over a year later.

■ In a premeditated murder a deliberate intention must be shown. § 40A–2–1(A)(1), N.M.S.A.1953. This intent is probably best defined in the new N.M.U.J. I. Crim. 2.00:[6]

A deliberate intention refers to the state of mind of the defendant. A deliberate intention may be inferred from all the facts and circumstances of the killing. The word deliberate means arrived at or determined upon as a result of careful thought and the weighing of the consideration for and against the proposed course of action. * * *

In the past this deliberate intent has been known as express malice. See *State v. Vigil*, supra. See generally, Committee Commentary to N.M.U.J.I. Crim. 2:00.[7]

■ This evidence, including the concealment of the body and the flight after the crime, was sufficient to create a jury issue on the deliberate intent of the defendant to kill Glennie McDonald. An instruction under § 40A–2–1(A)(1) on premeditated and deliberate murder was justified.

■ The jury was also instructed on felony murder. Presumably, the felony involved was the possible rape of the victim. But Dr. Weston, the State's expert witness, concluded that "there would be no way for me to say therefore that it was a criminal or an involuntary assault just on the pathologic evidence itself." The sperm found in the victim could not be dated or tied by

the evidence to the defendant. The State thus failed to meet the burden of proving each element of the felony. In short, there was not substantial evidence to instruct on felony murder.

■ An instruction on "depraved mind" or "universal malice" murder under § 40A–2–1(A)(4) was also given. This type of murder is generally defined as one in which the act done is dangerous to more than one person such as firing into a crowd or placing a bomb in an airport locker. See Committee Commentary to N. M.U.J.I. Crim. 2.05.[8] See generally, R. Perkins, Criminal Law 36–7 (2d ed. 1969). There is no evidence that the defendant committed an act that was dangerous to more than one person. Killing someone with a cement block certainly is the work of a "depraved mind," but its usage in our murder statute and others like it[9] has been limited to reckless acts in disregard of human life in general as opposed to the deliberate intention to kill one particular person. This instruction was improper.

■ Finally, the jury was instructed under § 40A–2–1(A)(5) which provides for murder "from a deliberate and premeditated design unlawfully and maliciously to effect the death of any human being." This type is generally known as "transferred intent" murder. See 1 O. Warren on Homicide § 73 (2d ed. 1938); Thompson & Gagne, The Confusing Law of Criminal Intent in New Mexico, 5 N.M.L.Rev. 63, 76 (1974). The common situation is when a person intends to kill one particular person and by accident or otherwise kills a different person.[10] There is no evidence

---

6. 2d Repl.Vol. 6, N.M.S.A.1953 (Supp.1975), at 295.

7. Institute of Public Law and Services, New Mexico Uniform Jury Instructions Criminal Approved Committee Commentaries (1975).

8. See note 6 supra.

9. See, e. g., *Longinotti v. People*, 46 Colo. 173, 102 P. 165 (1909); *Bass v. State*, 54 So.2d 259 (Miss.1951); *People v. Jernatowski*, 238 N.Y. 188, 144 N.E. 497 (1924).

10. In four of the present jury instructions for murder, bracketed language is used to cover this situation. For example, N.M.U.J.I. Crim. 2.00(2) states: "The killing was with the deliberate intention to take away the life of _____ [or any other human (name of victim) being]." See also N.M.U.J.I.Crim. 2.01(3), 2.02(3), 2.03(3) [2d Repl.Vol. 6, N.M.S.A. 1953 (Supp.1975), at 295–97].

**462**

that Daniel DeSantos intended to kill anyone other than Glennie McDonald. This instruction was improper.

Jury instructions should be confined to the issues in the case and the facts developed by the evidence. *State v. Romero,* 73 N.M. 109, 385 P.2d 967 (1963); *State v. Beal,* 55 N.M. 382, 234 P.2d 331 (1951); *Velasquez v. United States,* 244 F.2d 416 (10th Cir. 1957). But objections to improper instructions are normally required by N.M.R.Crim.P. 41 [11] to preserve error. No objections were made by the defendant.

This leaves us nothing to consider but whether the errors we have enumerated are "fundamental" as that word has been defined and applied by us. Fundamental error has been discussed and defined in a number of opinions.[12] A review of our precedents discloses that it is rarely applied.[13] In a number of cases it has been argued that although several errors standing alone would not constitute fundamental error, their cumulative effect was that the defendant did not receive a fair trial. Such claims are usually rejected.[14]

However, in *State v. Vallejos,* 86 N.M. 39, 519 P.2d 135 (Ct.App.1974) the Court of Appeals found fundamental error in three acts of misconduct by a district attorney. Chief Judge Wood, speaking for the court, said:

> [W]e consider the cumulative impact of the three items of misconduct. An accumulation of irregularities, each of which, in itself, might be deemed harmless may, in the aggregate, show the absence of a

fair trial. "A fair trial is implicit in the concept of ordered liberty." (citation omitted). An appellate court has the responsibility "to see that a person convicted of crime shall have a fair trial with a proper defense, and that no conviction shall stand because of the absence of either." (citation omitted).

86 N.M. at 43, 519 P.2d at 139.

We are particularly concerned with the instruction on felony murder. The jury could have believed that the evidence they had heard was sufficient to convict on that score. In fact, for ought we know, they did convict of felony murder. This error was compounded by remarks by the district attorney in his closing argument about a possible felony.

The other instructions which we have condemned are nearly as bad. They are couched in legalese but speak in readily understood opprobrious terms such as "depraved mind" and the like. The jury could have believed from the testimony and the photographs that the mind involved in this murder was certainly depraved. The transferred intent instruction is an unfortunate blend. It commences in terms of the statute which relates to the death of "any human being" and substitutes the name of the decedent for the quoted phrase. This act makes the instruction resemble first degree murder but without the element of willfulness and with other elements engrafted.

We hold that an intolerable quantum of confusion was injected into the case by these instructions to a degree that

11. Section 41–23–41, N.M.S.A.1953 (Supp. 1975).

12. See, e. g., *Smith v. State,* 79 N.M. 450, 444 P.2d 961 (1968); *State v. Lucero,* 70 N.M. 268, 372 P.2d 837 (1962); *State v. Garcia,* 19 N.M. 414, 143 P. 1012, reh. granted, 19 N.M. 420, 143 P. 1014 (1914).

13. With the exception of *State v. Vallejos,* discussed infra, fundamental error has been

found by New Mexico courts only in *State v. Garcia,* supra note 12 and *State v. Buhr,* 82 N.M. 371, 482 P.2d 74 (Ct.App.1971).

14. See, e. g., *State v. Victorian,* supra; *State v. Roybal,* 76 N.M. 337, 414 P.2d 850 (1966); *Nelson v. Cox,* 66 N.M. 397, 349 P.2d 118 (1960).

renders the verdict doubtful if not meaningless. This type of haphazard procedure will not be sanctioned. See *State v. Buhr*, 82 N.M. 371, 482 P.2d 74 (Ct.App.1971).

Courts and counsel should not conclude from what we say today that we intend to relax the strictures on the application of the doctrine of fundamental error in any of its forms, including cumulative error. Nor should it be assumed that the doctrine will be applied differently in capital cases. We will put no premium on incompetence of counsel in relation to making proper objections and will be on guard against the maneuvering of shrewd practitioners in hiding error in the record.

The defendant was also convicted of unlawfully taking a vehicle. We can find no error in this conviction and it is affirmed. The conviction of the defendant for first degree murder is reversed and remanded for a new trial.

IT IS SO ORDERED.

OMAN, C. J., and McMANUS, J., concur.