657 P.2d 128

**STATE of New Mexico,**
**Plaintiff-Appellee,**

v.

**Rudolph Augustine SENA,**
**Defendant-Appellant.**

**No. 13992.**

Supreme Court of New Mexico.

Jan. 17, 1983.

Mary Joe Snyder, Santa Fe, for defendant-appellant.

Jeff Bingaman, Atty. Gen., William Lazar, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

PAYNE, Chief Justice.

This appeal arises from the murder conviction of Rudolph Sena. The primary issue is the proper application of the "depraved mind" theory of first degree murder, Section 30–2–1, N.M.S.A.1978 (Cum.Supp.1982).

In March 1980, Sena, a woman, and another man entered a bar through the front entrance. The woman was holding a drink and the doorman did not allow her to enter with the drink. A dispute arose and Sena hit the doorman. The doorman then sprayed Sena with mace, hit him with a flashlight, and threw him out of the door. Within a few seconds, Sena returned with a gun. Sena opened fire on the doorman, who immediately turned and ducked. Sena fired four or five times. The first shot hit the doorman in the face, but the other shots missed. One of these shots struck and killed Raul Rodriguez, an innocent bystander.

**1. Use of Second Indictment.** Sena was originally indicted for second degree murder. However, three months later the district attorney reviewed the case and thought the evidence supported first degree murder. The district attorney sought and obtained a second indictment, this time for first degree murder. Sena asserts that under Section 31–6–11.1, N.M.S.A.1978 (Cum. Supp.1982), the second indictment should have been dismissed insofar as it covered first degree murder because it was based on the same evidence as the original indictment. Sena claims that by returning an indictment only for second degree murder, the original grand jury effectively returned a no bill as to first degree murder.

We cannot accept Sena's interpretation of the statute. The policy reasons expressed in *State v. Stevens,* 96 N.M. 627, 633 P.2d 1225 (1981), allow us to carefully consider motions for dismissal based on this type of procedural objection to an indictment. Section 31–6–11.1 specifies that no matter may be presented to a grand jury a second time once a grand jury has returned a no bill. We take this statute as it reads. We decline to engraft it with a judicially implied no bill in cases such as the present one. Because the original grand jury did not return a no bill, the district attorney was not precluded from resubmitting the case at a later time.

**2. Prejudicial Witness Statements.** Sena claims that during the trial the prosecutor elicited comments from the arresting officer concerning Sena's refusal to give a statement after the arrest, although the trial court had repeatedly warned the prose-

cutor about commenting on Sena's silence. The officer testified about Sena's attitude after the arrest and stated that Sena acted "like he knew his way around * * * being told his rights and he wasn't going to say anything." The defense initially moved for a mistrial but later withdrew the motion because Sena would be retried. Instead, the defense wanted the court or the prosecution to initiate the mistrial motion. Neither the court nor the prosecution complied with the defense suggestion. Instead, the court gave a curative instruction.

■ If the comments made by the officer were prejudicial, which is not clear, any prejudice was cured by the curative instruction given by the court. Also, the nature of Sena's objection at trial does not support a reversal. Sena withdrew his motion for a mistrial and directed his objection more to the prosecution's refusal to move for a mistrial and at the trial court's refusal to declare a mistrial on its own motion. The defense stated as a reason for not moving for a mistrial that it thought it was in the best possible posture it could be in regarding the direction of the trial. Sena's method of dealing with the issue at trial was a strategy decision and we will not reverse the trial court on so tenuous a ground, especially when error, if any, was cured by the court.

**3. Depraved Mind Theory.** The theory presented to the jury was that of the "depraved mind" under Section 30–2–1. Sena argues that the evidence supported a verdict based on transferred intent, but not the depraved mind theory, because there was a clear intention to kill the doorman. Sena cites *State v. DeSantos,* 89 N.M. 458, 461, 553 P.2d 1265, 1268 (1976), in which we stated that the use of the depraved mind theory "has been limited to reckless acts in disregard of human life in general as opposed to the deliberate intention to kill one particular person." However, in that case there was no evidence that the defendant committed an act that was dangerous to more than one person. The committee commentary to N.M.U.J.I.Crim. 2.05, N.M.S.A. 1978, states in part that [i]t is generally

believed that this murder occurs when the accused does an act which is dangerous to more than one person.

"[An example] of conduct which [has] been held to come within the depraved mind murder category [is]: firing a bullet into a room occupied by several people * * *."

Section 30–2–1(A)(4) reads in relevant part:

A. Murder in the first degree consists of all murder perpetrated:

* * * * * * * *

(4) by any act greatly dangerous to the lives of others, indicating a depraved mind regardless of human life;

* * * * * * * *

■ Sena cites cases which interpret their own versions of the depraved mind theory so that the existence of an intent to kill any particular individual would remove the act from this class of murder. *See, e.g., Napier v. State,* 357 So.2d 1001 (Ala.Cr.App. 1977). Regardless of such interpretations, we think our statute is clear. A murder committed by an act which indicates a depraved mind is a first degree murder. It is not limited to a situation where the defendant only intends to kill one person. By firing at the doorman in a room containing other persons within the line of fire, Sena committed an act "greatly dangerous to the lives of others" which falls within the depraved mind theory. It is irrelevant whether he intended only to kill the doorman as this does not necessarily preclude the elements which would also support the depraved mind theory. The fact remains that Sena's act, regardless of his specific intent to kill the doorman, was greatly dangerous to the lives of others and indicated a depraved mind without regard for human life. The statutory elements having been proved to the jury's satisfaction, Sena was properly convicted.

■ **4. Definition of Depraved Mind.** Sena claims that the court erred in refusing his proposed instruction which would have defined the term "depraved mind." However, the submitted instruction contained a particular limitation which does not accu-

rately reflect state law. Therefore, the refusal was proper.

The conviction is affirmed.

IT IS SO ORDERED.

FEDERICI and RIORDAN, JJ., concur.