2004-NMCA-013

84 P.3d 88

**STATE of New Mexico, Plaintiff–Appellant/Cross–Appellee,**

v.

**Jimmy Ray O'KELLY, Defendant–Appellee/Cross–Appellant.**

**Nos. 23,272, 23,364.**

Court of Appeals of New Mexico.

Nov. 25, 2003.

Certiorari Granted, No. 28,414, Jan. 13, 2004.

42

Patricia A. Madrid, Attorney General, Santa Fe, NM, Max Shepherd, Assistant Attorney General, Albuquerque, NM, for Appellant/Cross–Appellee.

John B. Bigelow, Chief Public Defender, Vicki W. Zelle, Assistant Appellate Defender, Santa Fe, NM, for Appellee/Cross–Appellant.

## *OPINION*

PICKARD, Judge.

{1} This case presents a novel set of facts that requires us to examine the limits of the depraved mind murder and felony murder statutes. Defendant was charged with false imprisonment, kidnapping, aggravated battery, felony murder, and depraved mind murder. He moved to dismiss both murder charges because neither he nor his accomplice committed the lethal act. The trial court dismissed the depraved mind murder charge, which the State appeals, and did not dismiss the felony murder charge, which Defendant appeals pursuant to our grant of his application for interlocutory appeal. First, we discuss the decision to dismiss the depraved mind murder charge and affirm the dismissal. Second, we discuss the decision not to dismiss the felony murder charge and reverse the denial of the motion to dismiss it.

## FACTS AND PROCEEDINGS

{2} The parties stipulated to the following facts for the purposes of this appeal. There was a party in a Las Cruces apartment complex. Hellaman Tellez lived in a first floor apartment directly beneath the apartment where the party occurred. Tellez's friend, Jose Campos, visited Tellez and then attended the party. By 1:30 a.m., the party had spread to the parking lot, and many of the party-goers were rowdy and violent.

{3} Two unidentified men from the party repeatedly rang the doorbell for Tellez's apartment. When Tellez opened the door, they forced their way inside. They scuffled with Tellez, hit him over the head with a bottle, and left the apartment. Tellez got his two loaded handguns and went out of his apartment to the first floor balcony.

{4} At the same time, a group of people in the parking lot had surrounded Jose Campos and were attacking him while Defendant held a gun to his head to prevent him from fleeing. The group severely beat, pistol-whipped, kicked, and punched Campos, breaking bottles over his head and giving him serious lacerations and other injuries.

{5} When Tellez came out of his apartment with his loaded guns, he witnessed Campos's attack. He pleaded with Defendant and his companions to stop the beating. As the beating continued, Defendant turned to point his gun at Tellez. Tellez fired at Defendant and Defendant fired back. In the ensuing gun battle, Defendant fired four shots. Tellez, who returned to his apartment at one point for more ammunition, fired 20 shots. One of Tellez's shots hit and fatally wounded Gerald Pettes, an innocent bystander. Tellez also injured Defendant and two or three others. None of Defendant's shots hit anybody.

{6} A grand jury indicted Defendant on counts of first degree (felony) murder, first degree kidnapping with a firearm enhancement, aggravated assault (deadly weapon) with a firearm enhancement, shooting at a dwelling or occupied building (no great bodily harm), and possession of a firearm or destructive device by a felon. Another grand jury issued a separate indictment of Defendant for first degree (depraved mind) murder, arising from the same incident. The trial court joined the indictments.

{7} Defendant moved to dismiss both murder charges. The trial court heard Defendant's motion to dismiss and ruled that the facts were not legally sufficient to support the depraved mind murder charge, but did suffice to support the felony murder charge. The court further certified the order denying the motion to dismiss the felony murder charge for interlocutory appeal.

{8} Defendant filed an application for interlocutory appeal of the trial court's decision not to dismiss the felony murder charge. *See* NMSA 1978, § 39–3–3 (1972). The State filed an interlocutory appeal as of right of the dismissal of the depraved mind murder charge. *See* § 39–3–3(B)(1). We assigned the consolidated appeal to the general calendar.

## DISCUSSION

### 1. Depraved Mind Murder

{9} The State appeals the trial court's dismissal of the depraved mind murder charge. The issue of whether Defendant may be held liable for depraved mind murder when he or his accomplice did not commit the lethal act that killed the innocent bystander is one of first impression. The State argues that the depraved mind murder charge should stand because Defendant "initiate[d] a gun battle in a public place" and therefore meets the intent and causation requirements. We disagree.

{10} As a matter of statutory interpretation and construction, we review the issue de novo. *State v. Pearson*, 2000–NMCA–102, ¶ 5, 129 N.M. 762, 13 P.3d 980. "Fundamentally, our role is to effectuate the Legislature's intent as evidenced by the statute's plain terms and avoid strained or absurd constructions." *Id.*

{11} NMSA 1978, § 30–2–1(A)(3) (1994) defines first degree murder as "the killing of one human being by another without lawful justification or excuse, by any of the means with which death may be caused ... by any act greatly dangerous to the lives of others, indicating a depraved mind regardless of human life." The jury instructions require the State to prove beyond a reasonable doubt that:

2. The defendant's act caused the death of [the victim];

3. The act of the defendant was greatly dangerous to the lives of others, indicating a depraved mind without regard for human life;

4. The defendant knew that his act was greatly dangerous to the lives of others[.] UJI 14–203 NMRA 2003 (footnote omitted).

{12} The intent element of depraved mind murder "encompass[es] an intensified malice or evil intent." *State v. Brown*, 1996–NMSC–073, ¶ 15, 122 N.M. 724, 931 P.2d 69. It requires that the defendant "acted with a depraved mind or wicked or malignant heart and with utter disregard for human life." *Id.* at ¶ 16 (internal quotation marks omitted). We have distinguished depraved mind murder from other first degree murder, characterizing it as "extremely dangerous and fatal conduct performed without specific homicidal intent but with a depraved kind of wantonness." *State v. Johnson*, 103 N.M. 364, 368, 707 P.2d 1174, 1178 (Ct.App. 1985). Courts require the defendant to have "subjective knowledge ... that his [or her] acts were greatly dangerous to the lives of the others." *Brown*, 1996–NMSC–073, ¶ 20 (internal quotation marks omitted).

{13} In depraved mind murder cases, defendants usually manifest their intent in one of two ways. First, depraved mind murder can apply to cases where there is intent to kill a specific person and bystanders are killed as a result of depraved acts flowing from this intent. *State v. Sena*, 99 N.M. 272, 274, 657 P.2d 128, 130 (1983) (affirming a depraved mind murder conviction when the defendant shot at a doorman and killed bystanders). More classically, "the act done is dangerous to more than one person such as firing into a crowd or placing a bomb in an airport locker." *State v. DeSantos*, 89 N.M. 458, 461, 553 P.2d 1265, 1268 (1976).

{14} There is also a causation element to depraved mind murder. Courts generally employ the jury instruction for causation in homicide cases which reads:

1. The death was a foreseeable result of the defendant's act;

2. The act of the defendant was a significant cause of the death of [the victim]. The defendant's act was a significant cause of death if it was an act which, in a natural and continuous chain of events, uninterrupted by an outside event, resulted in the death and without which the death would not have occurred.

[There may be more than one significant cause of death. If the acts of two or more persons significantly contribute to the cause of death, each act is a significant cause of death.]

UJI 14–251 NMRA 2003 (Homicide; "proximate cause"; defined.); *see State v. Trujillo*, 2002–NMSC–005, ¶ 25, 131 N.M. 709, 42 P.3d 814.

{15} Applying these requirements, New Mexico courts have upheld depraved mind murder convictions for shooting from a balcony into a group of people; committing multiple shootings, some fatal, in a crowded house; and shooting with intent to kill a doorman, but resulting in the deaths of bystanders. *Id.* at ¶¶ 31–32; *State v. Abeyta*, 120 N.M. 233, 246, 901 P.2d 164, 177 (1995), *abrogated on other grounds by State v. Campos*, 1996–NMSC–043, ¶ 32 n. 4, 122 N.M. 148, 921 P.2d 1266; *Sena*, 99 N.M. at 274, 657 P.2d at 130. In contrast, our Supreme Court has reversed depraved mind murder convictions when trial courts have incorrectly construed the intent element by refusing to instruct on intoxication as it relates to the subjective knowledge requirement or by instructing the jury to use an objective knowledge standard. *Brown*, 1996–NMSC–073, ¶¶ 34–35; *State v. Ibn Omar–Muhammad*, 102 N.M. 274, 277, 694 P.2d 922, 925 (1985), *modified on other grounds by State v. Cleve*, 1999–NMSC–017, ¶ 27, 127 N.M. 240, 980 P.2d 23. Our Supreme Court has also overturned a depraved mind murder conviction when the defendant's "depraved mind act" was too attenuated from the actual cause of death. *State v. Hernandez*, 117 N.M. 497, 499, 873 P.2d 243, 245 (1994) (holding that the defendant did not have intent for depraved mind murder when the fatal shot happened during a struggle for control of the rifle, some time after the defendant's initial shooting spree).

{16} In the present case, the issue is whether Defendant can be found to possess the depraved mind intent and to have been the proximate cause of an innocent bystander's death, given the fact that he did not fire the lethal bullet. The State argues that we should extend the depraved mind murder statute to include cases where the defendant sets in motion a chain of events that leads to the accidental death of a bystander. We disagree.

{17} New Mexico is one of only three states, along with Maine and Washington, to codify depraved mind murder as first degree murder. 2 Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law* § 7.7(d), at 244–45 & n. 65 (1986) ("Less defensible is placing depraved [mind] murder into this category [of first degree murder], as a few states have done."). Only New Mexico and Washington make it punishable by death. *See* John T. Rago, *"Truth or Consequences" and Post–Conviction DNA Testing: Have You Reached Your Verdict?*, 107 Dick. L.Rev. 845, 850, n. 21 (2003) (listing the states that have the death penalty). As a result, our courts have noted the necessity of construing depraved mind murder to "sufficiently distinguish the offense of first-degree depraved mind murder from second-degree murder." *Brown*, 1996–NMSC–073, ¶ 13. "First-degree murder is reserved for the most blameworthy or the most heinous and reprehensible class of homicides; thus, the difference in culpable mental states is crucial in justifying the more serious penal consequences of first-degree murder." *Id.* at ¶ 15 (internal quotation marks and citation omitted). In keeping with this view of depraved mind murder, we refuse to expand the doctrine to cover unintentional killings in which the lethal act was not committed by the defendant or his or her accomplices.

{18} The State urges us to follow the lead of California and other states who use a "provocative act murder" doctrine to find liability in these attenuated situations. We do not agree that New Mexico should adopt the standards of other states that include depraved mind murder as second degree murder, and whose depraved mind murder convictions do not carry the potentially capital consequences that New Mexico's statute imposes.

{19} In applying this limitation to the present case, it is clear that the trial court was correct to dismiss the depraved mind murder conviction. Defendant did not commit the lethal act, and Tellez, who did fire the lethal shot, was not Defendant's accomplice.

We therefore affirm the dismissal of the depraved mind murder charge.

## 2. Felony Murder

■ {20} Defendant challenges the trial court's failure to dismiss the felony murder charge on the grounds that he lacked the requisite intent, he was not the actual or proximate cause of the victim's death, and the potential for a capital sentence indicates that the felony murder charge is disproportionate to his actions. These claims raise legal issues and require us to interpret the felony murder statute, and we review them de novo. *Pearson,* 2000–NMCA–102, ¶ 5. Because we find that New Mexico espouses an agency theory that does not hold defendants responsible for lethal acts of third parties who are not accomplices, we reverse.

{21} Felony murder is the common law crime that makes a defendant liable for murder when a killing occurs in the commission or attempted commission of a crime. *See* LaFave, *supra,* § 7.5, at 206. The crime is generally said to have originated with Lord Coke's 1644 statement, "a death caused by any unlawful act is murder." 2 Charles E. Torcia, *Wharton's Criminal Law* § 147, at 296 (15th ed.1994) (internal quotation marks and citation omitted). Blackstone echoed this sentiment, stating that "if one intends to do another felony, and undesignedly kills a man, this is also murder." 4 William Blackstone, *Commentaries on the Laws of England* 201 (1769) (University of Chicago Press ed., 1979). In England, courts limited felony murder by requiring that the predicate felony be violent, or that the death be "the natural and probable consequence of the defendant's conduct in committing the felony." LaFave, *supra,* § 7.5, at 207.

{22} The general trend towards limiting the felony murder rule has continued in America, as courts and legislatures have limited the permissible predicate felonies, eliminated liability for deaths of accomplices, and created causation and intent requirements. LaFave, *supra,* § 7.5, at 208. These limitations have often come in response to criticisms that felony murder is "unfair, unprincipled and inconsistent with other criminal and civil standards." Rudolph J. Gerber, *The Felony Murder Rule: Conundrum Without Principle,* 31 Ariz. St. L.J. 763, 763 (1999). But, although England abolished felony murder in 1957, only three American states (Hawai'i, Kentucky, and Michigan) have completely abolished the rule. LaFave, *supra,* § 7.5, at 233 & nn. 136–37.

{23} New Mexico's felony murder rule states, "Murder in the first degree is the killing of one human being by another without lawful justification or excuse, by any of the means with which death may be caused ... in the commission of or attempt to commit any felony[.]" Section 30–2–1(A)(2). The root of our felony murder doctrine was a legislative determination "that a killing in the commission or attempted commission of a felony is deserving of more serious punishment than other killings in which the killer's mental state might be similar but the circumstances of the killing are not as grave." *State v. Ortega,* 112 N.M. 554, 565, 817 P.2d 1196, 1207 (1991). While the wording of our statute is broad, New Mexico has followed suit with the rest of the nation by creating a series of limitations to the felony murder doctrine.

{24} There are five main limitations to New Mexico's felony murder rule. First, the predicate felony must be the actual and proximate cause of the death. *State v. Harrison,* 90 N.M. 439, 441–42, 564 P.2d 1321, 1323–24 (1977), *superseded by rule on other grounds as stated in Tafoya v. Baca,* 103 N.M. 56, 60, 702 P.2d 1001, 1005 (1985). Second, the predicate felony must be inherently dangerous. *Id.* at 442, 564 P.2d at 1324. Third, the felony murder rule does not extend to cases where the victim of the predicate felony kills the defendant's accomplice. *Jackson v. State,* 92 N.M. 461, 462, 589 P.2d 1052, 1053 (1979). Fourth, there is a mens rea requirement that the defendant must possess at least the intent required for second degree murder. *Ortega,* 112 N.M. at 563, 817 P.2d at 1205. Finally, the "collateral-felony" limitation dictates that the predicate felony may not be a lesser included offense of second degree murder. *Campos,* 1996–NMSC–043, ¶ 19. Each of these doctrines is discussed in more detail below.

{25} New Mexico's first felony murder limitation was the causation requirement, which our Supreme Court announced in the 1977 case of *Harrison*. As a basis for this holding, the Court noted that the exact meaning of causation in the felony murder context had been the subject of much debate and confusion among academics and in other jurisdictions. *Harrison*, 90 N.M. at 441, 564 P.2d at 1323. The causation requirement clarified this by mandating that the predicate felony be both the actual and proximate cause of the death. "[C]ausation must be physical; causation consists of those acts of defendant or his accomplice initiating and leading to the homicide without an independent force intervening...." *Id.* at 441–42, 564 P.2d at 1323–24.

{26} The *Harrison* Court also created the requirement that the felony upon which the felony murder charge is based must be inherently dangerous. *Id.* at 442, 564 P.2d at 1324. The Court declared, "To presume conclusively that one who commits any felony has the requisite mens rea to commit first-degree murder is a legal fiction we no longer can support." *Id.* (emphasis omitted). By requiring the felony to be inherently dangerous, the Court effectively raised the felony murder intent requirement to assure that it would be "sufficient to justify convicting a defendant of felony murder and sentencing him to death or life imprisonment." *Id.* Thus, when the predicate felony is a first degree felony, there is a presumption that it is sufficiently dangerous to form the basis of a felony murder charge. *Id.* When the predicate felony is a more minor offense, the jury must make a factual determination based on the specific situation in the case as to whether the "circumstances surrounding its commission ... [were] inherently dangerous to human life." *Id.*

{27} Two years after *Harrison* established the causation requirement and the inherently dangerous felony test, our Supreme Court created a per se rule that felony murder charges are not permitted when the felony victim kills the defendant's accomplice. *Jackson*, 92 N.M. at 462, 589 P.2d at 1053. In *Jackson*, the Supreme Court stated, "[A]ny expansion of the felony-murder doc-trine would fly directly against the progressive direction taken by this [C]ourt in *Harrison*." *Id.* at 462, 589 P.2d at 1053. The Court did not articulate a specific policy basis for this rule, but rather cited a string of cases from across the country that had the same holding. Since all of Defendant's arguments essentially call for an extension of the *Jackson* rule to his peculiar circumstances, we will discuss the different rationales in more detail below.

{28} Twelve years later, in *Ortega*, 112 N.M. at 561, 817 P.2d at 1203, New Mexico added an intent element to felony murder. The defendant in *Ortega* argued that even with the *Harrison* limitations, felony murder was basically a strict liability crime with a punishment too severe to be constitutional under the United States Supreme Court's test regarding conclusive presumptions in *Morissette v. United States*, 342 U.S. 246, 275, 72 S.Ct. 240, 96 L.Ed. 288 (1952). The Court explained that the *Harrison* approach inferred the mens rea for murder from the mens rea for an inherently dangerous felony. It cautioned:

> [A]ny presumption which establishes a fact essential for conviction of the crime by proof of another fact, or which shifts to the defendant the burden of persuasion that the essential fact is not true, runs afoul of the Due Process Clause by conflicting with "the overriding presumption of innocence with which the law endows the accused and which extends to every element of the crime."

*Ortega*, 112 N.M. at 562, 817 P.2d at 1204 (internal quotation marks, citations, and emphasis omitted). The Court overcame this problem by rejecting the imputed intent approach in favor of a unique interpretation of the felony murder statute requiring "proof that the defendant intended to kill." *Id.* at 562–63, 817 P.2d at 1204–05. "An unintentional or accidental killing will not suffice." *Id.* at 563, 817 P.2d at 1205. Under this construction, the intent requirement for felony murder is identical to the intent requirement for second degree murder. *Id.* "The felony-murder intent requirement is satisfied if there is proof that the defendant intended to kill, [or] knew that his actions created a

strong probability of death or great bodily harm to the victim or another person...." *State v. Griffin,* 116 N.M. 689, 695, 866 P.2d 1156, 1162 (1993).

{29} Most recently, our Supreme Court incorporated a collateral felony requirement, which states that "the predicate felony cannot be a lesser-included offense of second-degree murder." *Campos,* 1996–NMSC–043, ¶ 19. Since "it is impossible to commit second degree murder without committing some form of both aggravated assault and aggravated battery," this requirement precludes the State from transforming all second degree murders to first degree murder. *Id.* at ¶ 23. In this analysis, courts apply a "strict elements test" that finds an offense to be a lesser-included offense "only if the statutory elements of the lesser offense are a sub-set of the statutory elements of the greater offense such that it would be impossible ever to commit the greater offense without also committing the lesser offense." *State v. Meadors,* 121 N.M. 38, 42, 908 P.2d 731, 735 (1995).

{30} These limitations have been codified in the Uniform Jury Instructions for felony murder:

> For you to find the defendant ... guilty of felony murder, which is first degree murder, ... the state must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
>
> 1. The defendant _____ (name of defendant) [committed] [attempted to commit] [the underlying felony] [under circumstances or in a manner dangerous to human life];
>
> 2. [The defendant] caused the death of [the victim] during [the commission of] [the attempt to commit] _____ (name of felony);
>
> 3. [The defendant] intended to kill or knew that [his][her] acts created a strong probability of death or great bodily harm[.]

UJI 14–202 NMRA 2003.

{31} In summary, all of New Mexico's felony murder limitations work together to ensure that defendants convicted of felony murder have a culpable mental state consistent with the legislature's retributive and punitive goals. Other states, like Kansas and California, use their felony murder statutes more broadly, "to deter negligent or accidental killings that may occur in the course of committing a felony." *Campos,* 1996–NMSC–043, ¶ 18. In contrast, New Mexico aims to punish those who commit an inherently dangerous felony with "malice" that results in death. *See Ortega,* 112 N.M. at 565, 817 P.2d at 1207.

{32} Defendant's claims all arise from the unusual set of facts presented in this case. It is uncontested that Defendant did not fire the shot that killed Pettes, the deceased victim. Tellez, the individual who did fire the lethal shot, was not Defendant's accomplice. Furthermore, unlike in *Jackson,* Pettes was not Defendant's accomplice either. The stipulated facts characterize him as an "innocent bystander," although Defendant asserts that Pettes was Defendant's "close friend." Under these unusual circumstances, Defendant claims that he cannot be liable for Pettes's death because he lacked the intent, and because Tellez was an independent intervening force. None of the reported facts in any prior New Mexico case indicate whether a defendant can be charged with felony murder based on the lethal acts of another person who is not an accomplice. Thus, this is a case of first impression and requires us to determine which approach is in keeping with New Mexico precedent and policy. Defendant basically invites us to extend *Jackson* to cases where a third party, who is not engaged in a common plan with the defendant, commits the lethal act and the victim is not the defendant's accomplice. We agree that this is the proper application of New Mexico law.

{33} The approaches that exist in this area of the law can be divided into two camps. The states that do not hold defendants liable for the acts of non-accomplices follow an "agency theory," where a defendant is only liable for murder "if the defendant or her cofelon actually performed the lethal act." James W. Hilliard, *Felony Murder in Illinois–The "Agency Theory" v. the "Proximate Cause Theory": The Debate Continues,* 25 S. Ill. U. L.J. 331, 332 (2001). The states that

do hold defendants liable for third party acts do so under the "proximate cause theory" that a defendant is responsible "for any death proximately resulting from the forcible felony or attempted forcible felony." *Id.*

{34} Although many jurisdictions expressly adopt one of these theories in their cases dealing with liability for the death of an accomplice, as discussed below, our Supreme Court did not espouse either theory in *Jackson.* However, it is useful to examine the rationale for the four cases that the Court cited in *Jackson* to support the proposition that a defendant cannot be liable for the death of an accomplice. All four cases use the agency theory as the basis for their holdings.

{35} The earliest two cases on which *Jackson* relied are from Pennsylvania: the seminal *Commonwealth v. Redline,* 391 Pa. 486, 137 A.2d 472 (1958), and its progeny, *Commonwealth ex rel. Smith v. Myers,* 438 Pa. 218, 261 A.2d 550 (1970). *Redline* and *Myers* both explicitly reject the proximate cause theory of liability. In *Redline,* the defendant had been convicted of felony murder of his co-felon, who was lethally shot by police. *Redline,* 137 A.2d at 473. The *Redline* court denounced a proximate cause approach because it found that "the thing which is imputed to a felon for a killing incidental to his felony is *malice* and *not the act of killing.* The mere coincidence of homicide and felony is not enough to satisfy the requirements of the felony-murder doctrine." *Id.* at 476 (emphasis in original). The court reasoned that in order to imply the malice from the acts of another, the other person must be engaged in a common criminal enterprise. *Id.* A concurring opinion noted that holding defendants liable for acts of people who share no common criminal objective has minimal deterrent value. *Id.* at 501 (Cohen, J., concurring). In *Myers,* the court reiterated its decision in *Redline* and further criticized the proximate cause theory as an inappropriate use of tort principles in a criminal context. *Myers,* 261 A.2d at 557.

{36} The third case on which *Jackson* relied, *State v. Canola,* 73 N.J. 206, 374 A.2d 20, 30 (1977), also expressly adopted the "agency theory" of felony murder. The facts involved a defendant who was convicted of felony murder for the acts of his robbery victim, who killed his accomplice. *Id.* at 20. After a thorough review of case law from different jurisdictions, the New Jersey Supreme Court stated that "modern progressive thought in criminal jurisprudence favors restriction rather than expansion of the felony murder rule." *Id.* at 29. The court stated, "Tort concepts of foreseeability and proximate cause have shallow relevance to culpability for murder in the first degree." *Id.* at 30. It also noted that the old common law formulations of the felony murder rule often excluded acts of third parties. *Id.* Finding that affirmance of the defendant's conviction in these circumstances would be a drastic expansion of New Jersey's felony murder doctrine, it reversed the felony murder conviction. *Id.*

{37} In the most recent case, *People v. Antick,* 15 Cal.3d 79, 123 Cal.Rptr. 475, 539 P.2d 43, 45 (1975) (en banc), *superseded on other grounds as stated in People v. Castro,* 38 Cal.3d 301, 211 Cal.Rptr. 719, 696 P.2d 111, 115 (1985), the defendant and his accomplice, Bose, committed a robbery together. Subsequently, Bose initiated a gunfight with the police that resulted in his own death from police fire. *Id.* at 45. The defendant was convicted of felony murder for Bose's death. *Id.* at 44. In striking the conviction, the California court summarized its support of the agency theory:

> When a killing is not committed by a robber or by his accomplice but by his victim, malice aforethought is not attributable to the robber, for the killing is not committed by him in the perpetration or attempt to perpetrate robbery. It is not enough that the killing was a risk reasonably to be foreseen and that the robbery might therefore be regarded as a proximate cause of the killing. Section 189 requires that the felon or his accomplice commit the killing, for if he does not, the killing is not committed to perpetrate the felony. Indeed, in the present case the killing was committed to thwart a felony. To include such killings within section 189 would expand the meaning of the words murder . . . which is

committed in the perpetration ... [of] robbery ... beyond common understanding. *Id.* at 48 (internal quotation marks and citation omitted).

{38} These cases exemplify the national trend towards adopting the agency theory. A review of New Mexico case law and policy reveals that our courts have followed this trend, and that the agency approach fits with New Mexico's unique felony murder doctrine.

{39} As stated earlier, no prior New Mexico case has ever raised this particular issue on appeal. However, in *Harrison*, our Supreme Court explained the difference between an independent intervening force and a dependent intervening force using these examples:

> A policeman who shoots at an escaping robber but misses and kills an innocent bystander would be considered a dependent, intervening force, and the robber would be criminally liable for felony murder under this test. Lightning striking and killing the bystander would be an independent, intervening force.

*Harrison*, 90 N.M. at 442 n. 1, 564 P.2d at 1324 n. 1. This example appears to follow a proximate cause rationale.

{40} However, *Harrison* was decided before New Mexico imposed its felony murder intent requirement, and its dicta are not enough to overcome the overwhelming trend towards limiting New Mexico's felony murder rule. Our unique configuration of felony murder limitations emphasizes that a defendant must possess the intent to kill in order to be charged with felony murder. As the Pennsylvania court explained in *Redline*, the agency approach ensures that the intent of another actor is only imputed to the defendant when they are engaged in a common criminal enterprise. We also believe that an agency approach follows our Supreme Court's edict against any expansion of the felony murder doctrine. *See Jackson*, 92 N.M. at 462, 589 P.2d at 1053.

{41} The State urges us to rely on the Wisconsin case of *State v. Oimen*, 184 Wis.2d 423, 516 N.W.2d 399, 405 (1994), which held that a defendant can be charged with felony murder when his intended victim kills an accomplice. We note that New Mexico has already rejected this doctrine expressly in *Jackson*. Furthermore, the *Oimen* court addressed the causation and intent issues involved in their holding by adopting a "substantial factor" test for felony murder causation. *Id.* at 404. Our Supreme Court expressly rejected the substantial factor test for felony murder in *State v. Montoya*, 2003–NMSC–004, ¶ 21, 133 N.M. 84, 61 P.3d 793, explaining that the test "only applies to situations where two causes, *each alone sufficient to bring about the harmful result*, operate together." (Internal quotation marks and citation omitted.) Therefore, we find that adopting *Oimen* would not be in keeping with existing New Mexico law.

{42} The State also refers us to the New York case *People v. Hernandez*, 82 N.Y.2d 309, 604 N.Y.S.2d 524, 624 N.E.2d 661 (1993). In *Hernandez*, the New York Court of Appeals overruled its own precedent to reject an agency theory in favor of a proximate cause approach. *Id.* at 665. It held that its former cases were based on an older version of the New York Penal Code, which had subsequently been revised to broaden the wording of the felony murder statute. *Id.* at 666. In addition to following legislative intent, the court explained that its holding was in keeping with an imputed intent theory:

> The basic tenet of felony murder liability is that the mens rea of the underlying felony is imputed to the participant responsible for the killing. By operation of that legal fiction, the transferred intent allows the law to characterize a homicide, though unintended and not in the common design of the felons, as an intentional killing.

*Id.* at 665 (internal citation and emphasis omitted). This imputed intent approach, which implies the intent for felony murder from the underlying felony, was expressly rejected by our Supreme Court in *Ortega*. *Ortega*, 112 N.M. at 562–63, 817 P.2d at 1204–05. Thus, *Hernandez* is not an appropriate model for New Mexico law.

{43} In summary, the agency approach is the logical extension of existing New Mexico felony murder law. Our Supreme Court's decision in *Jackson* relied on cases espousing

the agency approach. Our precedents directly conflict with the underpinnings of a proximate cause approach. Our existing limitations to the felony murder doctrine counsel against its expansion.

{44} In the instant case, the State argues: [I]t was entirely foreseeable that when [Defendant], who was apparently leading a group of his friends in brutally beating, and pistol whipping ... Tellez's friend, responded to ... Tellez's pleas to stop the beating by pointing his gun at an obviously armed ... Tellez, ... Tellez would, fearing for his life, respond by firing at [Defendant].

The State further argues, "[D]efendant knew that when he threatened an armed ... Tellez with his weapon that that act created a strong probability of death of or of great bodily harm to ... Tellez or another." This view of the facts arguably creates sufficient jury questions of intent and causation to support a felony murder charge under a strict reading of *Harrison* and *Ortega*. A narrow reading of the jury instructions might also suggest that these facts could support a felony murder charge.

{45} However, under the agency rule we announce today for the reasons discussed above, this is not enough to overcome the facts that Tellez was not Defendant's accomplice and that they were not engaged in any common enterprise. Without an accomplice relationship between Defendant and the person who committed the lethal act, there is not enough to support a charge of felony murder under an agency view.

{46} We hold that the Defendant's felony murder charge cannot stand, and we reverse the trial court's failure to dismiss the charge.

## CONCLUSION

{47} We affirm the dismissal of the depraved mind murder charge and reverse the failure to dismiss the felony murder charge.

{48} **IT IS SO ORDERED.**

WE CONCUR: MICHAEL D. BUSTAMANTE and CELIA FOY CASTILLO, Judges.