**The PEOPLE of the State of Colorado, Complainant,**

v.

**Michael T. MIRANDA, Respondent.**

**No. 06PDJ010.**

July 10, 2007.

**OPINION AND ORDER IMPOSING
SANCTIONS PURSUANT TO
C.R.C.P. 251.19(b)**

### I.  *ISSUE/SUMMARY*

■  Suspension is generally appropriate when a lawyer knowingly engages in criminal conduct that *seriously* adversely reflects upon his fitness to practice law.  Respondent collided with a motorcyclist while operating a motor vehicle under the influence of alcohol. The motorcyclist later died from his injuries. Respondent argues that a public censure is sufficient because of the unintentional nature of his crime.  Is public censure appropriate when a lawyer knowingly violates the law and causes overwhelming emotional harm?

■  The Hearing Board finds that public censure is an insufficient sanction for a lawyer who causes the death of another while operating a vehicle after knowingly consuming alcohol to excess.  Colorado lawyers are sworn to abide by the laws of this state. When they do not, the integrity of the legal profession is rightfully questioned.  Even if Respondent did not intend the death of another, a public censure would allow Respondent to continue practicing law upon his release from the Department of Corrections, an event that will likely occur within the next two years.  Under such circumstances, he could practice law without any review of his fitness to practice law or other issues raised in this case about his physical and mental status or his abuse of alcohol.  Furthermore, a public censure would unduly undermine the seriousness of the crime.

*SANCTION IMPOSED:* **ATTORNEY SUSPENDED FOR TWO (2) YEARS**

### II.  *PROCEDURAL HISTORY*

On February 16, 2006, the People filed a complaint in this matter and Respondent filed an answer on March 13, 2006.  On April 19, 2006, the People filed a motion for judgment on the pleadings and Respondent filed a response on May 8, 2006.  On May 25, 2006, the Court issued an order granting the People's motion for judgment on the pleadings on the single claim, violation of C.R.C.P. 251.5(b) and Colo. RPC 8.4(b) (it is professional misconduct for a lawyer to commit a crime that reflects adversely on his fitness to practice law).  Therefore, the only issue before the Hearing Board is the appropriate sanction for Respondent's violation of C.R.C.P. 251.5(b) and Colo. RPC 8.4(b).

### III.  *FINDINGS OF MATERIAL FACT*

The Hearing Board finds that the following facts have been established by clear and

convincing evidence and hereby adopts and incorporates by reference the Court's factual findings from its "Order Re: Motion for Partial Judgment on the Pleadings" dated May 25, 2007. As noted in the Court's order, Respondent admitted that he was convicted of vehicular homicide, a class three felony, in violation of C.R.S. § 18-3-106(*l*)(b)(I). Further, Respondent's conviction adversely affects his fitness to practice law.

In addition to the findings of fact in the Court's order granting judgment on the pleadings, the Hearing Board notes the following summary of matters that bear on its decision that Respondent should be suspended from the practice of law.

Respondent took and subscribed the oath of admission and he gained admission to the Bar of the Colorado Supreme Court on October 14, 1994. He is registered upon the official records of the Colorado Supreme Court, Attorney Registration No. 28946, and is therefore subject to the jurisdiction of the Court.

In the early evening of September 4, 2004, Respondent was driving his motor vehicle northbound on South Colorado Boulevard. As he turned left into a parking lot, Respondent's motor vehicle collided with a motorcycle traveling southbound and ridden by Kristopher Mansfield, a twenty-three year-old senior airman with the United States Air Force stationed at Buckley Air Force Base who had recently returned from a tour of duty in Iraq. Following the collision, Mr. Mansfield was taken to Denver Health Medical Center and was later pronounced dead at 4:45 p.m. on September 6, 2004.

Denver police arrested Respondent and tested his blood alcohol level from a blood sample. An initial test showed a blood alcohol content of .217. A second test showed a blood alcohol content of .198. At the time of the incident, a blood alcohol content of .10 was the threshold level for the criminal charge of driving under the influence of alcohol.

On September 29, 2005, Respondent entered a guilty plea to vehicular homicide/DUI, a class three felony in violation of C.R.S. § 18-3-106(1)(b)(I). On December 2, 2005, the trial court sentenced him to eight years in the Department of Corrections plus five years of mandatory parole. On April 14, 2006, the Colorado Supreme Court immediately suspended Respondent from the practice of law without objection. As of the date of this hearing, Respondent remains in the custody of the Department of Corrections and he has not practiced law for over fifteen months.

## IV. SANCTIONS

■ The ABA Standards for Imposing Lawyer Sanctions (1991 & Supp.1992) ("ABA *Standards*") and Colorado Supreme Court case law are the guiding authorities for selecting and imposing sanctions for lawyer misconduct. *In re Roose*, 69 P.3d 43, 46–47 (Colo.2003). In imposing a sanction after a finding of lawyer misconduct, as the Court did here as a matter of law, the Hearing Board must first consider the duty breached, the mental state of the lawyer, the injury or potential injury caused, and the aggravating and mitigating evidence pursuant to ABA *Standard* 3.0.

### Duties Breached

■ Respondent breached his duty to the public to abide by the criminal laws of the State of Colorado and thereby seriously adversely affected his fitness to practice law. By driving a vehicle with a .217 blood alcohol content, Respondent failed to maintain the standards of personal integrity upon which the community relies. Lawyers above all others are sworn to respect and honor the law. In addition, Respondent's actions breached his duties to the legal profession and its members.

### State of Mind

■ Even though the crime of vehicular homicide does not contain an element of knowing or reckless conduct, the Hearing Board finds that Respondent acted knowingly when he consumed an excessive amount of alcohol. This knowing conduct resulted in an *extremely* high level of intoxication and he voluntarily drove a motor vehicle in this condition. Anyone who happened to be on a public street at the time he drove was at risk.

■ *For purposes of sanctions analysis,* knowing conduct is conduct that demonstrates Respondent's awareness of what he was doing, but without the conscious objective to produce a certain result. It is undisputed that Respondent was aware that he consumed alcohol and drove a car thereafter. He did not intend the tragic death of Kristopher Mansfield, but he knowingly and voluntarily created the circumstances that resulted in his death.

Three days before this accident, according to testimony Respondent offered through Kathey Verdeal, PhD,[1] doctors placed a stint in Respondent's heart as a result of cholesterol blockage he suffered. During this same period of time, Respondent had also been taking blood-thinning medication, cholesterol mediation and he had lost over twenty pounds. Respondent had also reduced his consumption of alcohol in advance of the stint operation.

As Dr. Verdeal testified, these circumstances compromised Respondent's physiological ability to process alcohol. Nevertheless, Dr. Verdeal acknowledges that even under normal circumstances Respondent's blood alcohol content would have been as high as .115 at the time of the accident.

While these circumstances *may* mitigate, they also reveal that Respondent should have been particularly careful about drinking alcohol given his physical condition. Respondent either knew or should have known that to drink alcohol to excess and then drive a vehicle was not only dangerous to himself but to others.

### Injury

Respondent's misconduct resulted in the death of Kristopher Mansfield. There is no way to mend this injury and its impact on his family and friends. Craig and Marilyn Mansfield, and Julianne and Donald Legg, the parents of Kristopher Mansfield, provided detailed testimony and victim statements about the emotional injury they along with their families and friends have suffered as a result of Respondent's misconduct.[2]

### Aggravating Factors—ABA Standard 9.22

The Hearing Board finds a single aggravating factor: substantial experience in the practice of law. *See* ABA *Standard* 9.22(i). Respondent had practiced nearly ten years at the time of his misconduct.

### Mitigating Factors ABA Standard 9.32

Respondent presented evidence and the People conceded a number of the following factors the Hearing Board finds in mitigation: absence of a prior disciplinary record; absence of a dishonest or selfish motive; timely and good faith effort to make monetary restitution to the victim's family; full and free disclosure to the People; good character and reputation; imposition of other penalties in the criminal process; and remorse. *See* ABA *Standards* 9.32(a), (b), (d), (e), (g), (k), and (*l*).

### Analysis of ABA Standards and Case Law

The ABA *Standards* suggest that the presumptive sanction is suspension. Respondent knowingly engaged in criminal conduct and that conduct adversely reflects on his fitness to practice law. If Respondent's conviction involved an intentional criminal act, disbarment would have been the appropriate sanction. ABA *Standard* 5.11.

The Hearing Board finds Justice Quinn's dissent in *People v. Fahselt,* 807 P.2d 586 (Colo.1991) helpful in its analysis of the appropriate sanction. In *Fahselt,* Justice Quinn dissented from the majority's opinion approving a public censure for a lawyer found guilty of vehicular assault, a class five felony. In his dissent, Justice Quinn stated that suspension of two to three years for a vehicular assault would normally be appropriate. In that case, as in this case, there were a number of mitigating factors. Given those mitigating factors, Justice Quinn opined that a suspension of one year and one day was appropriate.

■ The Hearing Board determines that a two-year suspension is appropriate in this

---

1. Dr. Verdeal is a forensic toxicologist.

2. Marilyn Mansfield did not testify, but did provide a victim statement.

case, in part because Respondent's level of intoxication was over twice the legal limit in Colorado. Furthermore, Respondent's crime resulted in the death of another. The public's outcry against those who drive while under the influence of alcohol or any other substance is well recognized and accepted. Most important, any sanction less than a suspension would unduly depreciate the seriousness of Respondent's crime in the eyes of the public and the profession.

## VI. *CONCLUSION*

One of the primary goals of our disciplinary system is to protect the public from lawyers who pose a danger to them. The facts establish a serious breach of a duty to maintain personal integrity, a matter that directly concerns public safety. Respondent's knowing state of mind and the substantial injury, despite the numerous factors in mitigation, call for a suspension.

The purpose of the attorney regulation system is not to punish lawyers; instead it is to protect the public. Whenever possible, however, the attorney regulation system *also* recognizes that some lawyers may be rehabilitated, even after suspension based upon a breach of personal integrity as established here. Respondent was sentenced to eight years imprisonment and five years of mandatory parole in the criminal court; under these circumstances rehabilitation will be difficult. At the end of his suspension Respondent may petition for reinstatement of his license to practice law.

In the reinstatement process, Respondent may demonstrate that he is remorseful and has taken positive steps toward rehabilita-

tion, as he demonstrated in these proceedings. If he can demonstrate by clear and convincing evidence that he is again fit to practice law and has *addressed and resolved* any physical, emotional, or alcohol abuse issues that brought him to this Court, he *may* be reinstated. Reinstatement, however, is not automatic.

■ Ultimately, the hearing board that hears Respondent's petition for reinstatement must determine not only whether he is rehabilitated but more important, whether the public will be protected if he is reinstated to the practice of law. Protection of the public is of paramount concern in attorney regulation matters, including petitions for reinstatement.

## VII. *ORDER*

The Hearing Board therefore **ORDERS**:

1. **MICHAEL T. MIRANDA,** Attorney Registration No. 28946, is **SUSPENDED** from the practice of law for a period of **TWO (2) YEARS**, effective thirty-one (31) days from the date of this order.

2. **MICHAEL T. MIRANDA** shall pay the costs of these proceedings. The People shall submit a Statement of Costs within fifteen (15) days of the date of this order. Respondent shall have ten (10) days within which to respond.