This decision was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of non-precedential dispositions. Please also note that this electronic decision may contain computer-generated errors or other deviations from the official paper version filed by the Supreme Court.

**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

**Filing Date:  February 19, 2018**

**NO. S-1-SC-36128**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**STEVEN LEE LUCERO,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CHAVES COUNTY**
Kea W. Riggs, District Judge


Robert E. Tangora, L.L.C.
Robert E. Tangora
Santa Fe, NM

for Appellant


Hector H. Balderas, Attorney General
Elizabeth Ann Ashton, Assistant Attorney General
Santa Fe, NM

for Appellee

**DECISION**

**VIGIL, Justice.**

**I.    INTRODUCTION**

{1}    In this capital appeal, Steven Lee Lucero (Defendant) appeals his convictions of felony murder and conspiracy to commit felony murder. Defendant was charged in connection with the death of Isaiah Sanchez (Victim). At trial, the State presented evidence that Defendant enlisted his ex-wife, brother, and brother's girlfriend in luring Victim to a vacant house, fatally stabbing him, and stealing his truck and his wallet. Defendant raises a number of challenges to both convictions and argues that cumulative error requires reversal of the convictions. For the reasons that follow, we reject each of his arguments and affirm both convictions.

**II.    BACKGROUND**

{2}    The State presented the case that Defendant—with the help of his brother, Gilbert Lucero (Gilbert), Gilbert's girlfriend, Sheri Sanchez (Sheri), and his ex-wife, Vanessa Lucero (Vanessa)—beat, stabbed, and killed Victim in the course of stealing his truck and his wallet. Defendant was acquainted with Victim through his ex-wife, Vanessa. Defendant and Vanessa had rekindled their relationship and were living together. Vanessa had recently dated Victim, but left the relationship when Victim hit,

punched, and choked her.

{3} Defendant, an auto-mechanic, owned a truck similar to Victim's. Defendant's truck was not operable at the time. When Victim contacted Vanessa via Facebook, Defendant asked her to arrange to meet Victim so he could steal Victim's truck for its parts. Vanessa complied and arranged to meet Victim at a local bar under the pretense of a drug deal.

{4} Vanessa, along with Defendant, Gilbert, and Sheri, went to the bar to meet Victim. Defendant and Gilbert planned to sneak around from behind Victim's truck, pull him out, and drive away in his truck. The brothers hid in the back seat of the car as Victim drove up. Vanessa got out of their car and walked up to Victim, who was sitting in his truck. The plan failed when Defendant and Gilbert heard someone coming and got "spooked." Vanessa proceeded to buy the drugs from Victim, and the four left the scene.

{5} Defendant then asked Sheri to call Victim, see if he had plans for the evening, and invite him to "party." Sheri called Victim, put him on speaker phone, and invited him to join them at a house on Maryland Street. Once again, Defendant and Gilbert hid in the back seat of the car while Vanessa and Sheri led Victim inside the house. The brothers then entered and hid in a corner inside the house, waiting for Victim to

approach them. The brothers had guns, which belonged to Gilbert, as well as knives. When Victim approached the brothers, they jumped out and attacked. Defendant stabbed Victim, who tried to fight back. At least two shots were fired. As the attack continued, Defendant asked Sheri and Vanessa to go and watch for police.

{6}     Defendant and Gilbert left the scene in Victim's truck. They met Sheri and Vanessa at the home of a friend. Realizing that he was missing part of his gun, Defendant left Victim's truck at the friend's house and the four returned to the house on Maryland Street.

{7}     When they returned to the scene, Defendant realized Victim was still alive. Defendant, observing Victim lying on the floor and "[g]asping" for air, remarked, "that fucker['s] still breathing." Defendant then asked Sheri and Vanessa to leave, and they did so. Sheri and Vanessa waited down the road until Defendant called and said that he and Gilbert were ready to be picked up. When Sheri and Vanessa returned, Defendant told Vanessa that he had stabbed Victim again. Defendant took Victim's wallet, fifteen dollars, and one of his shoes. They left and dumped the shoe, weapons, and their bloodied clothes into the Pecos River.

{8}     Later, Defendant moved Victim's truck from his friend's house to another location, referred to in testimony as a "mechanic shop." The owner of the shop

testified that Defendant worked on the truck for about a month. Defendant removed the engine and rims from Victim's truck and placed them in his own truck.

{9} At trial, Defendant admitted that he had acquired Victim's truck and had put its parts in his own truck. He testified that Vanessa had given him the truck and that she "promised me a title. But she didn't come up with it." He also testified that the truck was not running and was already missing parts when Vanessa gave it to him. Defendant also testified that he regularly acquired old cars and "part[ed] them out" for money.

{10} The jury was instructed on the following offenses: first-degree, willful and deliberate murder, contrary to NMSA 1978, Section 30-2-1(A)(1) (1994); conspiracy to commit first-degree, willful and deliberate murder, contrary to NMSA 1978, Section 30-28-2(A) (1979); felony murder based on the predicate felony of armed robbery, contrary to Section 30-2-1(A)(2) and NMSA 1978, Section 30-16-2 (1973); conspiracy to commit felony murder, contrary to Section 30-28-2(A) and Section 30-2-1(A)(2); and tampering with evidence, contrary to NMSA 1978, Section 30-22-5 (2003).

{11} The jury convicted Defendant of armed robbery (the predicate to felony murder), felony murder, and conspiracy to commit felony murder. The district court

vacated the armed robbery conviction to avoid double jeopardy concerns. *See State v. Frazier*, 2007-NMSC-032, ¶ 1, 142 N.M. 120, 164 P.3d 1 (holding that "the predicate felony is always subsumed into a felony murder conviction" for double jeopardy purposes). Defendant appeals his convictions of felony murder and conspiracy to commit felony murder, pursuant to Rule 12-102(A)(1) NMRA. We exercise jurisdiction to review the appeal under Article VI, Section 2 of the New Mexico Constitution.

## III. DISCUSSION

{12} Before addressing the merits of Defendant's claims, we express our concern regarding the obvious inconsistencies between defense counsel's presentation of Defendant's arguments on appeal and the actual case before the district court. For instance, defense counsel erroneously contends that "[t]here was insufficient evidence to support the jury verdict for *conspiracy to commit first degree deliberate intent murder*," yet Defendant was not convicted of this offense. We must presume defense counsel actually intended to challenge Defendant's conviction of conspiracy to commit felony murder, the offense for which he was actually convicted. Given the gravity of Defendant's convictions and the importance of the issues this Court is obligated to consider, it is simply unacceptable for defense counsel to make such

obvious mistakes in the appeal. We caution defense counsel to be diligent in adhering to the record and in framing the issues for review on appeal. Such matters of import require no less.

**{13}** We discern from Defendant's briefs the following three bases for appeal: (1) the evidence was insufficient to support the conviction of felony murder, in that the State failed to prove an element of armed robbery, the predicate felony, and the State failed to prove that the killing occurred in the commission of the armed robbery; (2) the jury was not instructed on conspiracy to commit felony murder, and there was insufficient evidence to support the conviction of conspiracy to commit felony murder; and (3) cumulative error requires reversal of the convictions. After considering the evidence presented, the pertinent laws, and the instructions given to the jury, we affirm.

**{14}** With respect to Defendant's challenges to the sufficiency of the evidence, "we resolve all disputed facts in favor of the State, indulge all reasonable inferences in support of the verdict, and disregard all evidence . . . to the contrary." *State v. Largo*, 2012-NMSC-015, ¶ 30, 278 P.3d 532 (internal quotation marks and citation omitted). "[O]ur review never serves as a substitution for the jury's fact-finding role[.]" *State v. Tafoya*, 2012-NMSC-030, ¶ 36, 285 P.3d 604. "It is our duty," however, "to

7

determine whether any rational jury could have found the essential facts to establish each element of the crime beyond a reasonable doubt." *State v. Consaul*, 2014-NMSC-030, ¶ 42, 332 P.3d 850 (internal quotation marks and citation omitted). We review issues of law de novo. *State v. Cleve*, 1999-NMSC-017, ¶ 7, 127 N.M. 240, 980 P.2d 23.

## A.     Felony Murder Conviction

**{15}**     We first examine the felony murder conviction. Felony murder is defined as a killing committed "in the commission of or attempt to commit any felony." Section 30-2-1(A)(2). In order to convict a defendant of felony murder, the State must prove the following: (1) "the defendant committed or attempted to commit a felony, which was either a first-degree felony or was committed under circumstances or in a manner dangerous to human life"; (2) "the defendant caused the death of the victim during the commission or attempted commission of the felony"; and (3) "the defendant intended to kill or knew that his or her acts created a strong probability of death or great bodily harm." *State v. Marquez*, 2016-NMSC-025, ¶ 13, 376 P.3d 815; *see also State v. O'Kelly*, 2004-NMCA-013, ¶¶ 24-31, 135 N.M. 40, 84 P.3d 88 (explaining the felony murder doctrine and various limitations on the scope of felony murder liability). In his appeal, Defendant challenges his felony murder conviction on two grounds. First,

8

Defendant argues that the State failed to prove an element of the predicate felony, armed robbery. Second, Defendant argues that the killing did not occur in the commission of the predicate felony. We reject both arguments.

**1.    Defendant committed armed robbery, the predicate felony for felony murder**

{16}    Defendant's conviction of felony murder rests on the predicate felony of armed robbery, a second-degree felony. Section 30-16-2. Armed robbery is defined as "the theft of anything of value from the person of another or from the immediate control of another, by use or threatened use of force or violence," with the use of a deadly weapon. Section 30-16-2; *see also* NMSA 1978, § 30-1-12(B) (1963) (defining a deadly weapon). The jury found that Defendant committed armed robbery by taking Victim's truck and/or wallet in a manner dangerous to human life. *See Marquez*, 2016-NMSC-025, ¶ 13. We conclude that the State presented sufficient evidence to prove that Defendant committed armed robbery.

{17}    To prove armed robbery, the State must first prove that a defendant intended "to permanently deprive the owner or another of the property." *Lopez v. State*, 1980-NMSC-050, ¶¶ 3-4, 94 N.M. 341, 610 P.2d 745. The State presented evidence that Defendant wanted Victim's truck for its parts, that Defendant was observed removing parts from Victim's truck, and that its engine and rims were eventually

9

discovered on Defendant's truck. Such evidence sufficiently supported a finding that Defendant intended to permanently deprive Victim of his truck. *Cf. State v. Flores*, 2010-NMSC-002, ¶ 19, 147 N.M. 542, 226 P.3d 641 (stating that "[i]ntent is . . . almost always inferred from [the] other facts in the case" (first alteration in original) (internal quotation marks and citation omitted)).

**{18}** Second, the State must prove that a defendant "mov[ed] the property from the place where it was kept or placed by the owner." *State v. Williams*, 1982-NMSC-041, ¶ 14, 97 N.M. 634, 642 P.2d 1093. The trial testimony established that Defendant left the house on Maryland Street in Victim's truck. This was sufficient to establish this finding—that Defendant moved Victim's truck from the place where it was kept or placed by Victim.

**{19}** Third, armed robbery requires the State to prove that a defendant accomplished the taking through the use of force or violence. This is not, by itself, enough to establish an armed robbery, but rather "must be the lever by which the thing of value is separated from the person or immediate control of another." *State v. Baca*, 1971-NMCA-142, ¶ 5, 83 N.M. 184, 489 P.2d 1182. The testimony that Defendant stabbed Victim and that two gunshots were fired was sufficient to support the findings that Defendant took Victim's truck through the use of force and that Defendant used

10

a deadly weapon in the commission of the offense. *See State v. Montano*, 1961-NMSC-174, ¶ 4, 69 N.M. 332, 367 P.2d 95 (recognizing that a gun is a "deadly weapon" for the purposes of armed robbery).

{20} On appeal, Defendant argues that the State did not prove the final element of armed robbery: that he took the property from Victim's "person" or "immediate control." *See* Section 30-16-2. We disagree. It was enough to establish that Defendant incapacitated Victim before taking his property. *See State v. Pitts*, 1985-NMCA-045, ¶¶ 10-15, 102 N.M. 747, 700 P.2d 650 (citing *State v. Cottone*, 145 A.2d 509, 513-14 (N.J. Super. Ct. App. Div. 1958) ("An actual physical removal of the property from the person of the victim is not required, and it is sufficient if the property be taken from the presence of the victim."). That is what occurred when Defendant, after luring Victim to the house on Maryland Street, attacked him and absconded with his truck. This evidence was sufficient to support a finding that Defendant took the property from Victim's "immediate control." *Pitts*, 1985-NMCA-045, ¶¶ 10-15.

{21} Not only did the State prove that Defendant took Victim's truck, it also presented evidence that Defendant returned to the scene to fatally stab Victim and steal his shoe, wallet, and fifteen dollars. This supported the jury's finding that Defendant was guilty of armed robbery for both the truck and the wallet. For the

11

foregoing reasons, we conclude that there was overwhelming evidence to prove that Defendant committed armed robbery, the predicate felony.

**2.      Defendant caused the killing in the commission of armed robbery**

{22}     To sustain a conviction of felony murder, the State must prove that "the defendant caused the death of the victim during the commission or attempted commission of the felony." *Marquez*, 2016-NMSC-025, ¶ 13; *see also State v. Harrison*, 1977-NMSC-038, ¶ 10, 90 N.M. 439, 564 P.2d 1321, *superseded on other grounds by Tafoya v. Baca*, 1985-NMSC-067, ¶ 17, 103 N.M. 56, 702 P.2d 1001 (explaining the traditional test of felony murder and limiting its application to cases in which the victim died as a result of the defendant's acts).

{23}     Defendant contends that the killing did not occur in the commission of the predicate felony of armed robbery. Defendant claims that the armed robbery and the actual killing were "not closely connected" as required to support a conviction of felony murder. This argument is premised on the fact that he had already stolen Victim's truck when he returned to the house on Maryland Street and delivered the fatal blow. *See State v. Martinez*, 1982-NMCA-053, ¶ 17, 98 N.M. 27, 644 P.2d 541 (noting that the killing and the predicate felony must be "part of one continuous transaction and closely connected in point of time, place, and causal connection").

12

Perhaps a more substantial break in time or the sequence of events would support a legitimate challenge to a felony murder conviction; *see id.*, however, we find no merit to this argument in the instant case. Not only did Defendant stab Victim when he took Victim's truck in the first instance, but when Defendant returned to the house on Maryland Street and realized Victim was still alive, he exerted the fatal blow and took Victim's wallet. This evidence was sufficient to establish that the armed robbery and killing were part of a continuous transaction and closely connected in time, place, and causal relation. Therefore, we reject Defendant's argument to the contrary.

{24} There was ample evidence to conclude that Defendant's acts caused the death of Victim. In *Harrison*, we limited the scope of liability to killings in which the death was caused by the acts of the defendant or an accomplice. *See* 1977-NMSC-038, ¶ 11. Consistent with the testimony that Defendant repeatedly stabbed Victim, the official cause of death was multiple sharp and blunt injuries. An autopsy revealed sharp injuries, including stab wounds to the back of Victim's head, neck, face, and chest; blunt injuries, including contusions and lacerations to the face, head, and neck; as well as underlying fractures to the skull. Victim had also suffered "defensive" injuries consistent with an attempt to ward off an attack. We conclude here that there was more than enough evidence to prove that Victim died as a result of Defendant's own

13

acts. *See id.*

## 3. Defendant intended to kill or knew that his acts created a strong probability of death or great bodily harm

{25}    Lastly, in accordance with the requirements for proof of felony murder, we acknowledge that the State presented abundant evidence to support a finding that the killing was intentional. *See State v. Ortega*, 1991-NMSC-084, ¶ 25, 112 N.M. 554, 817 P.2d 1196, *abrogated on other grounds by Kersey v. Hatch*, 2010-NMSC-020, ¶¶ 17-18, 148 N.M. 381, 237 P.3d 683; *see also* § 30-2-1(B) (explaining that the minimum intent required to sustain a felony murder conviction in New Mexico is equivalent to that required to prove second-degree murder: knowledge that the defendant's acts created a strong probability of death or great bodily harm). The State presented evidence that Defendant "lay in wait," armed with a gun and a knife, stabbed Victim in a prolonged attack, returned and made a derisive comment about his survival before finishing him off. The jury could have also inferred that Defendant had a motive to kill Victim based on Vanessa's ill-fated relationship with Victim. This was sufficient to prove that Defendant not only knew that his acts could result in death, but had the deliberate intent to kill. *Cf. Flores*, 2010-NMSC-002, ¶¶ 19, 22 (describing motive, plan, lying in wait, carrying a deadly weapon, and method of killing as evidence sufficient to support the intent requirement for first-degree, willful

14

and deliberate murder). For the foregoing reasons, we conclude that the State proved each and every element of felony murder, and we therefore affirm this conviction.

**B.     Conspiracy**

{26}     In addition to felony murder, Defendant was convicted of conspiracy to commit felony murder. Defendant renders two challenges to his conspiracy conviction—the jury was not instructed on conspiracy to commit felony murder, and there was insufficient evidence to support the conviction. We address each argument in turn.

{27}     The crime of conspiracy is separately punishable from its target offense, *see State v. Silvas*, 2015-NMSC-006, ¶ 22, 343 P.3d 616, and is directed at "the special and continuing dangers incident to group activity." *State v. Gallegos*, 2011-NMSC-027, ¶ 59, 149 N.M. 704, 254 P.3d 655 (internal quotation marks and citation omitted). It is defined as "knowingly combining with another for the purpose of committing a felony within or without this state." Section 30-28-2(A).

{28}     In New Mexico, the crime of conspiracy is complete when a felonious agreement is reached. *State v. Lopez*, 2007-NMSC-049, ¶ 21, 142 N.M. 613, 168 P.3d 743. There is no requirement that the defendant commit an overt act in furtherance of the target offense in order to be guilty of a conspiracy. *Id.* However, mere "passive submission" and "acquiescence" are insufficient to establish a conspiracy. *State v.*

15

*Mariano R.*, 1997-NMCA-018, ¶ 4, 123 N.M. 121, 934 P.2d 315.

{29}    Conspiracy is a specific intent offense. *State v. Baca*, 1997-NMSC-059, ¶ 51, 124 N.M. 333, 950 P.3d 776. The State must prove both intent to agree and intent to commit the target offense—in this case, felony murder. *State v. Trujillo*, 2002-NMSC-005, ¶ 62, 131 N.M. 709, 42 P.3d 814. We upheld a conviction of conspiracy to commit felony murder in a case where the State presented evidence of a defendant's specific intent to kill. *State v. Lopez*, 2005-NMSC-036, ¶¶ 25-26, 138 N.M. 521, 123 P.3d 754 (upholding a conviction of conspiracy to commit felony murder where, during the course of a robbery, the defendant sealed the victim inside a well), *overruled on other grounds by State v. Frawley*, 2007-NMSC-057, ¶ 22, 143 N.M. 7, 172 P.3d 144. Having reviewed the evidence in support of the felony murder conviction itself, we need not repeat that evidence here.

{30}    Defendant raises two challenges to his conspiracy conviction. First, Defendant argues that the jury was not instructed on conspiracy to commit felony murder and was only instructed on conspiracy to commit willful and deliberate murder. This argument is inconsistent with the record. The record reveals that the jury was instructed on both offenses. For conspiracy to commit felony murder, the jury was instructed as follows:

16

For you to find the defendant guilty of conspiracy to commit first degree murder by felony murder as charged in Count 2, the [S]tate must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:

1. The defendant and another person by words or acts agreed together to commit first degree murder by felony murder;

2. The defendant and the other person intended to commit first degree murder by felony murder;

3. This happened in New Mexico on or about the 4th day of June, 2014.

The jury was also instructed on the elements of felony murder and given a general instruction that the State was required to prove that Defendant "acted intentionally when he committed the crime." This is consistent with the uniform jury instruction and our precedent regarding the offense. Rule 14-2810 NMRA; *see Lopez*, 2005-NMSC-036, ¶¶ 25-26. Therefore, Defendant's argument is a blatant misstatement of what was presented below. We conclude that there is no merit to his claim that the jury was not instructed on this offense.

{31} Second, Defendant asserts that the State did not prove that he conspired to commit armed robbery or murder. Defendant notes that following "the initial conspiracy, there were no discussions between the group of committing murder, an armed robbery, or even a simple robbery." It is well established that a conspiracy need

17

not be proven by verbal agreement and can be inferred from acts indicating that the "co-conspirator[s] knew of and participated in the scheme." *State v. Herrera*, 2015-NMCA-116, ¶ 18, 362 P.3d 167.

{32} The evidence showed that Defendant asked Vanessa to initiate a meeting with Victim, with the express intention of creating an opportunity to steal Victim's truck. Vanessa complied with Defendant's request. During the meeting, Defendant hid in the back seat with his brother in order to sneak up on Victim, pull him out of his truck, and drive away with it. When that scheme failed, Defendant asked Sheri to call Victim and invite him to come to the house on Maryland Street, which she did. Once there, Defendant and his brother, Gilbert, once again lay in wait for Victim to approach. Then, along with Gilbert and using his weapons, Defendant attacked Victim. Following the attack, Defendant and his co-conspirators drove Victim's truck to a friend's house, left it there, and returned to the scene. Back at the house on Maryland Street, Defendant inflicted the fatal blow and took Victim's shoe, wallet, and fifteen dollars. Upon leaving the scene, the co-conspirators disposed of the weapons and bloodied clothing in the Pecos River.

{33} We conclude that the evidence was sufficient to support the jury's finding that Defendant conspired to commit felony murder. The jury could have reasonably

inferred that Defendant, Gilbert, Vanessa, and Sheri had an agreement to commit an armed robbery and understood that Victim would not likely survive the encounter. *Herrera*, 2015-NMCA-116, ¶ 18 (stating that the agreement may be proven by words or acts (citation omitted)). The evidence leaves no reasonable doubt that Defendant, with others, engaged in a scheme to deprive Victim of his property and exert deadly force if necessary to do so. We conclude that the evidence was sufficient to prove that Defendant committed conspiracy to commit felony murder under New Mexico law.

## C. Cumulative Error

{34} Last, Defendant contends that cumulative error requires reversal of the convictions. Absent any identifiable error in the record that would support a reversal of the convictions, we reject this contention.

## IV. CONCLUSION

{35} We conclude that the State presented sufficient evidence to sustain Defendant's convictions of felony murder and conspiracy to commit felony murder. We determine that the jury was indeed instructed on the charge of conspiracy to commit felony murder. Defendant's remaining arguments are unavailing. We therefore affirm.

{36} **IT IS SO ORDERED.**

_____

19

                    **BARBARA J. VIGIL, Justice**

**WE CONCUR:**


_____
**JUDITH K. NAKAMURA, Chief Justice**



_____
**PETRA JIMENEZ MAES, Justice**



_____
**EDWARD L. CHÁVEZ, Justice**



_____
**CHARLES W. DANIELS, Justice**