This decision of the Supreme Court of New Mexico was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Supreme Court.

## IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Filing Date: December 13, 2021**

**No. S-1-SC-37567**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**ESIAS FRANK MADRID,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Jacqueline Flores, District Judge**

Peifer, Hanson, Mullins & Baker, P.A.
Rebekah Anne Gallegos
Albuquerque, NM

for Appellant

Hector H. Balderas, Attorney General
John Kloss, Assistant Attorney General
Santa Fe, NM

for Appellee

## DECISION

**BACON, Justice.**

**{1}** A jury convicted Defendant Esias Madrid of depraved-mind first-degree murder for the killing of Decedent Jaydon Chavez-Silver, contrary to NMSA 1978, Section 30-2-1(A)(3) (1994). On direct appeal, Defendant raises three claims for reversal: (1) that he was provided ineffective assistance of counsel at trial and sentencing, (2) that the district court committed fundamental error based on alleged deficiencies in the jury instructions, and (3) that insufficient evidence supported his conviction for depraved-mind murder. Additionally, Defendant argues that Counts 2, 3, and 4—on which the

district court declared a mistrial—should be dismissed with prejudice on double jeopardy grounds.

**{2}** For the reasons that follow, we affirm Defendant's conviction and dismiss Counts 2, 3, and 4 as moot. Because these issues are sufficiently addressed by New Mexico precedent, we exercise our discretion to resolve this case by way of a nonprecedential decision under Rule 12-405(B)(1) NMRA.

## I. FACTUAL AND PROCEDURAL BACKGROUND

**{3}** On June 26, 2015, Decedent was shot and killed by a bullet fired into the house where he was attending a party. In September 2016, charges including first-degree murder were filed against Defendant, who was seventeen years old at the time of the homicide. The evidence presented to the jury at Defendant's trial, viewed in the light most favorable to sustain the verdict, *see State v. Sutphin*, 1988-NMSC-031, ¶ 21, 107 N.M. 126, 753 P.2d 1314, established the following facts.

**{4}** At least two weeks prior to the homicide, a friend of Defendant's was beaten at a house party at the same location where Decedent was killed. On the date of the homicide, Defendant and his companions discussed revenge for the beating. Defendant and his companions believed the target of their revenge would attend the house party the night of the murder.

**{5}** Accompanied by three others, Defendant and State's witness Nick Gonzales drove to the house party with firearms. They parked outside the house, and Defendant, Gonzales, and another companion exited the vehicle. Gonzales approached the front door of the house while Defendant and the other companion walked to a window and determined that people were inside the house, including their intended target. Once the three individuals returned to their vehicle, Gonzales fired two shots toward the house from his 9-millimeter handgun before it jammed, and Defendant fired at least four shots toward the house from his .40-caliber handgun. Decedent was killed by a .40-caliber bullet.

**{6}** Two other suspects were in custody for the homicide for a year before Defendant's name arose in the investigation.

**{7}** At Defendant's trial, after dismissing three counts, the district court renumbered the remaining counts as follows, in short: Count 1, murder; Count 2, shooting at a dwelling; Count 3, shooting from a motor vehicle; and Count 4, conspiracy to commit homicide, shooting at a dwelling, and shooting from a motor vehicle.

**{8}** Defendant was represented by attorney Daniel Salazar. Salazar argued in his opening statement that the State could not prove beyond a reasonable doubt that Defendant was involved in the shooting. In support of his theory of the case, Salazar argued that the State's case relied on the testimony of uncredible witnesses, that Gonzales in particular was uncredible due to exchanging his testimony for a plea deal, and thus the State could not meet its burden to prove Defendant's guilt beyond a reasonable doubt. Salazar told the jury that "the evidence will show that [Defendant] is a

patsy and nothing more." Salazar did not present a defense following the State's case-in-chief.

**{9}** Salazar's closing statement similarly asserted that the State's witnesses testified inconsistently and in exchange for plea deals, and that the State's physical evidence failed to show Defendant was actually involved in the crime. Salazar told the jury that "[w]e don't concede that [Defendant] was even there. . . . [Defendant] is innocent; the State hasn't proven otherwise."

**{10}** The jury returned its verdict on October 3, 2017. Of the sixteen verdict forms, the jury signed only the "guilty" verdict form for depraved-mind first-degree murder. When polled, each juror indicated in the affirmative that the verdict as read "reflect[ed] the verdict of the jury as a whole" and "also reflect[ed] [each juror's] individual verdict." The district court then initiated the following exchange:

> THE COURT: All right. Now I have to ask—and I'll ask you, Mr. Foreperson. Did the jury consider the remaining counts? There was Count 1 and there was the alternative to Count 1. And there was Count 2 and Count 3, and Count 4? Did the jury consider those counts?
>
> THE JUROR: We did.
>
> THE COURT: Were you able to come to unanimous agreement as to a verdict in terms of those counts?
>
> THE JUROR: We were all in agreement that we believed the instructions to be if the count—if the jury was unanimous of murder in the first-degree, that Counts 2, 3, and 4 were subsequent to second-degree, so we did consider them, but we thought that if we found the first-degree, we stopped at that point.
>
> THE COURT: Okay. So it was your impression that the instructions directed you to stop at that point; is that what you're saying?
>
> THE JUROR: Yes. If we found first-degree, yes.
>
> THE COURT: Okay. Does everyone agree with that? Does anybody disagree with that?
>
> So is it fair to assume, Mr. Foreperson,—and please let me know. It is important. Does the jury consider those counts at all? Did you discuss it?
>
> THE JUROR: Yes.
>
> THE COURT: Okay. You did. All right.

The district court thereafter declared a mistrial as to Counts 2, 3, and 4, stating that "there is a manifest necessity for the discharge of [the] jury in terms of those charges. But the first-degree conviction will stand."

**{11}** Defendant was sentenced at a hearing on November 30, 2017. As detailed further below, Salazar argued that the district court should exercise its discretion to hand down a sentence of less than life or concurrent to Defendant's unrelated existing sentence. Salazar argued that several factors in the case warranted such consideration, including Gonzales's lack of credibility, Defendant's juvenile status at the time of the homicide, and possible media influence on the jury. The district court recognized its sentencing discretion under statute but nonetheless handed down a life sentence to run consecutively to Defendant's existing sentence.

## II.    DISCUSSION

### A.    Ineffective Assistance of Counsel

**{12}** Defendant alleges a "cascade" of prejudicial errors by Salazar that amounted to ineffective assistance of counsel. Defendant identifies four alleged errors as "particularly prejudicial": (1) failure to request a lesser-included offense instruction and corresponding verdict form for second-degree murder as a lesser-included offense to depraved-mind murder, as charged in the alternative to Count 1, (2) failure to proffer a jury instruction or offer expert testimony regarding Defendant's juvenile status, (3) failure to request a jury instruction on testifying codefendants, and (4) failure to adequately prepare for and present at sentencing. Defendant further argues that these alleged errors constitute cumulative prejudice. In the alternative, Defendant argues that the Court should remand for an evidentiary hearing. We address these arguments in turn.

### 1.    Standard of review and applicable law

**{13}** "We review the legal issues involved with claims of ineffective assistance of counsel de novo." *State v. Crocco*, 2014-NMSC-016, ¶ 11, 327 P.3d 1068. "We consider the entire proceeding as a whole and judge any claim of ineffectiveness on whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *State v. Trujillo*, 2002-NMSC-005, ¶ 47, 131 N.M. 709, 42 P.3d 814 (internal quotation marks and citation omitted).

**{14}** New Mexico has adopted the United States Supreme Court's holding in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), *superseded on other grounds by* Antiterrorism and Effective Death Penalty Act of 1996, PL 104-132, 110 Stat. 1214 (1996), for evaluating a claim of ineffective assistance of counsel under the Sixth Amendment of the United States Constitution. *State v. Favela*, 2015-NMSC-005, ¶ 10, 343 P.3d 178. "In order to be entitled to relief on the basis of ineffective assistance of counsel, a defendant must show that (1) 'counsel's performance was deficient,' and (2) 'the deficient performance prejudiced the defense.'" *State v. Trammell*, 2016-NMSC-

030, ¶ 16, 387 P.3d 220 (quoting *Strickland*, 466 U.S. at 687); *see State v. Schoonmaker*, 2008-NMSC-010, ¶ 32, 143 N.M. 373, 176 P.3d 1105 (identifying "deficient performance" under *Strickland* as "error on the part of counsel"), *overruled on other grounds by State v. Consaul*, 2014-NMSC-030, 332 P.3d 850. "Counsel's performance is deficient if it 'fell below an objective standard of reasonableness.'" *State v. Hunter*, 2006-NMSC-043, ¶ 13, 140 N.M. 406, 143 P.3d 168 (quoting *Strickland*, 466 U.S. at 688).

**{15}** "We indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks and citation omitted). "[A] prima facie case [of ineffective assistance of counsel] is not made when a plausible, rational strategy or tactic can explain the conduct of defense counsel." *Trujillo*, 2002-NMSC-005, ¶ 43 (internal quotation marks and citation omitted). "Failure to prove either prong of the test defeats a claim of ineffective assistance of counsel." *State v. Jacobs*, 2000-NMSC-026, ¶ 51, 129 N.M. 448, 10 P.3d 127, *overruled on other grounds by State v. Martinez*, 2021-NMSC-002, 478 P.3d 880.

## 2. The record does not support a presumption of prejudice

**{16}** As a preliminary matter, we note that Defendant argues at length that this Court should apply an exception to the general rule for ineffective assistance of counsel, based on Salazar's own disciplinary proceedings that ran concurrent with his representation of Defendant. *See In re Salazar*, 2019-NMSC-010, 443 P.3d 555. Defendant argues that the deficiencies found by this Court in Salazar's professional conduct in unrelated cases warrant a presumption of prejudice, thereby relieving Defendant of the burden to establish prejudice here. Defendant argues for this presumption under both New Mexico's recognized exceptions to the general rule, *see, e.g.*, *State v. Grogan*, 2007-NMSC-039, ¶¶ 12-14, 142 N.M. 107, 163 P.3d 494 (discussing exceptions due to "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified" (internal quotation marks and citation omitted)), and under *People v. Williams*, 444 N.E.2d 136 (Ill. 1982) (ordering a new trial where defense counsel's capital representation ran concurrent with his unrelated disciplinary proceedings), which Defendant invites us to adopt.

**{17}** However, as we discuss below, we do not find error as alleged by Defendant. Without a finding of error, a claim of ineffective assistance of counsel is defeated, *see Jacobs*, 2000-NMSC-026, ¶ 51, and thus we do not reach the question of whether Defendant is entitled to a presumption of prejudice. For this reason, we do not further address Salazar's disciplinary proceedings nor *Williams*, which we do not adopt.

## 3. The record does not show deficient performance regarding the lesser-included offense jury instruction

**{18}** Defendant asserts that Salazar committed error by not requesting a jury instruction and corresponding verdict form for second-degree murder as a lesser-

included offense for depraved-mind first-degree murder, as charged in the alternative to Count 1. Defendant argues that "[t]he jury should have been given the choice to compare evidence that may have indicated" the similar mens rea for depraved-mind first-degree murder "to evidence that may have instead show[n]" the mens rea for second-degree murder. *See State v. Reed*, 2005-NMSC-031, ¶¶ 16-18, 22, 138 N.M. 365, 120 P.3d 447. Defendant points to *State v. Reynolds* for the proposition that a jury's guilty verdict on a greater offense cannot preclude the possibility that the jury would have found guilt instead on a lesser offense if instructed thereon. 1982-NMSC-091, ¶ 11, 98 N.M. 527, 650 P.2d 811.

**{19}** In this case, Instruction No. 1 directed the jury to "consider these instructions as a whole" and to not disregard "one instruction or parts of an instruction." *See State v. Parish*, 1994-NMSC-073, ¶ 4, 118 N.M. 39, 878 P.2d 988 ("[I]nstructions must be considered as a whole, and not singly[.]"). Other instructions included those for willful and deliberate first-degree murder, second-degree murder, and depraved-mind first-degree murder. Instruction No. 10 directed the jury to "move to a discussion of murder in the *second* degree" *only* "[*i*]*f*, after reasonable deliberation, you do not agree that the defendant is guilty of murder in the *first* degree." (Emphasis added.) Referencing first- and second-degree murder generally, Instruction No. 10 also directed that the jury "may not find the defendant guilty of more than one of the [two] foregoing crimes."

**{20}** The foregoing indicates that the jury was fully instructed on second-degree murder and was directed to consider that crime only if it did not reach a finding of guilt on either form of first-degree murder. The instructions did not direct the jury to exclude or reserve its consideration of depraved-mind murder from the jury's deliberation of first-degree murder as provided in Instruction No. 10. Defendant offers no authority for his proposition that (1) the foregoing instructions nonetheless should have been "ordered and phrased . . . [as] appl[ying] both to Count 1 *and* the Alternative to Count 1," or (2) the second-degree murder instruction should have been given twice: once as a lesser-included offense to willful and deliberate first-degree murder, as charged in Count 1, and again as a lesser-included offense to depraved-mind first-degree murder, as charged in the alternative to Count 1.

**{21}** Because the jury was instructed on the relevant lesser-included charge, Defendant's citation to *Reynolds*, 1982-NMSC-091, is inapposite. In *Reynolds*, the jury was instructed on first-degree murder, second-degree murder, and self-defense, but an instruction on voluntary manslaughter was refused. *Id.* ¶ 1. The *Reynolds* Court found reversible error where the jury returned a guilty verdict on first-degree murder but was not given a proper choice among possible verdicts due to the refused voluntary manslaughter instruction. *Id.* ¶¶ 11-12. "'Even though the jury is instructed to consider first-degree murder and make a determination before moving on to any lesser offenses, the jury is also instructed on each of the crimes charged, and the elements of each, before deliberation ever begins.'" *Id.* ¶ 11 (quoting *State v. Benavidez*, 1980-NMSC-097, ¶ 5, 94 N.M. 706, 616 P.2d 419). Here, there was no such absence of instruction on the lesser-included charge of second-degree murder and its elements prior to the jury's deliberation.

**{22}** For the foregoing reasons, we find that Defendant does not show that Salazar erred by not requesting an additional jury instruction and corresponding verdict form for second-degree murder as a lesser-included offense. Defendant has not met his burden to show deficient performance as required for a claim of ineffective assistance of counsel.

### 4. The record does not show deficient performance in the lack of proffered instruction or offered testimony regarding Defendant's juvenile status

**{23}** Defendant next asserts that Salazar committed error "by not proffering a jury[] instruction on juvenile 'subjective knowledge' and by not offering any expert testimony to rebut the depraved-mind mens rea." Relying on *State v. Brown*, 1996-NMSC-073, 122 N.M. 724, 931 P.2d 69, Defendant argues "the need to instruct the jury where a defendant's attributes may impact their subjective knowledge in a way that negates th[at] required element" of depraved-mind murder. Defendant further argues that the science of juvenile-brain development and related caselaw establish his juvenile status as such an attribute, thus requiring expert testimony and a jury instruction on juvenile subjective knowledge. In support, Defendant cites four scientific sources on brain development for the proposition that the juvenile mind lacks adult maturity. As well, Defendant cites the United States Supreme Court's relevant observations in *Miller v. Alabama*, including that children "have a lack of maturity and an underdeveloped sense of responsibility." 567 U.S. 460, 471 (2012) (internal quotation marks and citation omitted).

**{24}** "In New Mexico, it is clear that the crime of depraved mind murder requires the mental state of subjective knowledge." *Brown*, 1996-NMSC-073, ¶ 30 (internal quotation marks omitted). *See* § 30-2-1(A)(3); UJI 14-203(4) NMRA ("The defendant knew that the act was greatly dangerous to the lives of others."); *see also* UJI 14-203(3) (defining an act greatly dangerous to the lives of others as "indicating a depraved mind without regard for human life").

**{25}** In *Brown*, this Court found reversible error where the trial court refused the defendant's submitted jury instruction "to take into consideration the [presented] evidence of his intoxication and its effect on the requisite mental state of subjective knowledge." 1996-NMSC-073, ¶ 34. The *Brown* Court noted intoxication as a defense that modernly "may . . . negate a required offense element." *Id.* ¶ 21 (quoting 1 Paul H. Robinson, *Criminal Law Defenses* § 22, at 75 (1984)). Under the defendant's theory of the case at trial, "he was so severely intoxicated that he was not subjectively aware of the seriousness of the risk entailed by his conduct, as required for depraved mind murder." *Id.* ¶ 33. "When evidence at trial supports the giving of an instruction on a defendant's theory of the case, failure to so instruct is reversible error." *Id.* ¶ 34. Accordingly, the *Brown* Court held that "when the crime charged is depraved mind murder, evidence of intoxication may be taken into consideration by the jury when determining the existence of the required mens rea of subjective knowledge." *Id.* ¶ 35 (emphasis and internal quotation marks omitted).

**{26}** Defendant's argument under *Brown* fails for two reasons. First, contrary to Defendant's assertion, *Brown* did not generally require an instruction where a defendant's attributes *may* impact their subjective knowledge in a way that negates the required element. Instead, *Brown* held that such an instruction regarding intoxication was required where it had been requested and where relevant evidence consistent with the requested instruction had been presented pursuant to the defendant's theory of the case. *Id.* ¶ 34. Here, such an instruction regarding juvenile status was not requested and evidence was not presented as to Defendant's lack of subjective knowledge.

**{27}** Second, Defendant presented a plausible theory of his case that did not call for evidence negating his subjective knowledge. Instead, Salazar articulated a theory of the case that Defendant had not been present at the scene of the crime and that he was merely a "patsy" indicted by an uncredible witness. Indeed, pursuing a subjective-knowledge jury instruction would have been counterproductive to Salazar's decision to pursue the all-or-nothing defense that he did. *See State v. Baca*, 1997-NMSC-059, ¶ 27, 124 N.M. 333, 950 P.2d 776 ("[T]he decision to pursue an alibi or all-or-nothing defense is not outside the range of effective representation."). Thus, pursuant to Defendant's plausible theory of the case, expert testimony and a jury instruction on juvenile subjective knowledge were not required under *Brown*. Under the facts of this case, we decline Defendant's invitation to extend *Brown*.

**{28}** Apart from *Brown*, Defendant does not cite any authority requiring a subjective-knowledge instruction to supplement the uniform jury instructions. In contrast, we have twice said that "'this Court's adoption of uniform jury instructions proposed by standing committees of the Court establishes a presumption that the instructions are correct statements of law.'" *Parish*, 1994-NMSC-073, ¶ 26 (quoting *State v. Wilson*, 1994-NMSC-009, ¶ 5, 116 N.M. 793, 867 P.2d 1175).

**{29}** Because *Brown* does not govern, Defendant's supporting citations to science and caselaw concerning juvenile maturity do not avail here. Existing law does not require the expert testimony or subjective-knowledge instruction for juveniles argued by Defendant.

**{30}** For the foregoing reasons, we find that Defendant does not show that Salazar erred by not requesting an instruction or offering testimony regarding juvenile subjective knowledge. Defendant has not met his burden to show deficient performance as required for a claim of ineffective assistance of counsel.

**5.    The record does not show deficient performance in not requesting an instruction on testifying codefendants**

**{31}** Defendant next asserts that Salazar committed error by "fail[ing] to request [a jury] instruction on the testimony of accomplices." Defendant argues that the case against him "relied heavily on convincing the jury [that] the co-defendant, Gonzales, was truthful in claiming [Defendant] and *not he* fired the fatal bullet." Defendant concedes that "New Mexico does not require such an instruction," but nonetheless contends that Salazar committed error by not requesting the instruction where the State's case relied on accomplice testimony.

**{32}** "We have held that UJI 14-5020 [NMRA] is a sufficient instruction to alert the jury to its responsibility to evaluate witness testimony and a court's refusal to give further instructions is not error." *State v. Sarracino*, 1998-NMSC-022, ¶ 9, 125 N.M. 511, 964 P.2d 72. Here, the jury was properly directed to the issue of witness credibility by UJI 14-5020. Defendant's claim for an additional jury instruction, which the law is not obliged to provide, is without merit.

**{33}** For the foregoing reasons, we find that Defendant does not show that Salazar erred by not requesting an additional instruction on testifying codefendants. Defendant has not met his burden to show deficient performance as required for a claim of ineffective assistance of counsel.

**6.     Defendant does not show deficient performance by Salazar at sentencing**

**{34}** Defendant next asserts that Salazar committed error by failing to adequately prepare for and present at sentencing. Defendant argues that Salazar failed to "present mitigating information or expert testimony at [Defendant's] sentencing hearing, and fail[ed] to make any meaningful argument for a sentence of less than life-imprisonment." Defendant argues that Salazar "failed to articulate any comprehensible reason for the district court . . . to run [his] sentence concurrently" with his existing sentence from a separate case. Defendant also argues that Salazar's presentation at sentencing consisted of "[t]angents" and "passing references" to varied topics that fell short of "cogent argument."

**{35}** The record does not support Defendant's allegations regarding Salazar's failure to present mitigating information or meaningful arguments for a less-than-life or a concurrent sentence. Continuing his case theory from trial, Salazar argued at sentencing that the State had not met its burden and that the district court should exercise its discretion to sentence Defendant to less than the maximum available. In support, Salazar argued that the State had shown no motive for Defendant; that Defendant had accepted responsibility in a separate case, thus adding credibility to his claimed innocence here; that Defendant could not show remorse for something he did not do; and that the statements of Decedent's family and their need for closure should not affect sentencing. While acknowledging that the district court had to respect the jury's guilty verdict, Salazar argued that flaws in the evidence weighed toward clemency in sentencing: two others being in custody for the homicide for a year before Defendant's name arose in the investigation; credibility concerns regarding Gonzales, the State's primary witness; local media attention affecting the result; and the potential influence of a mass shooting the weekend before the verdict was returned.[1] Salazar twice referenced Defendant's status as a youthful offender regarding the district court's available discretion to sentence him to less than a life sentence or to a concurrent sentence. Notably, Defendant acknowledges several relevant arguments made by Salazar, including that "the State had other individuals indicted for the same crime" and

---

[1] A high-profile public shooting occurred in Las Vegas, Nevada on Sunday, October 1, 2017. *See* Casey Harrison, *'In Our Memories Forever': Las Vegas Marks 4th Anniversary of Oct. 1 Mass Shooting,* Las Vegas Sun (Oct. 1, 2021), https://lasvegassun.com/news/2021/oct/01/in-our-memories-forever-las-vegas-marks-4th-annive/ (last visited Dec. 1, 2021). The jury returned its verdict on Tuesday, October 3, 2017.

that "Gonzales was just angry [Defendant] would not provide him with an alibi." The foregoing establishes that Salazar did articulate reasonable arguments for the district court to hand down a less-than-life or concurrent sentence. Thus, Defendant does not show deficient performance in this regard.

**{36}** Defendant is correct that Salazar did not present expert testimony at sentencing. However, Defendant offers no clear argument or authority as to how the lack of such testimony at sentencing constitutes error by Salazar under existing law. Defendant only refers to his earlier citations to "juvenile brain development and corresponding case law," but he makes no argument specific to sentencing under those citations. Because "[t]he decision whether to call a witness is a matter of trial tactics and strategy within the control of trial counsel," Defendant bears the burden to show error here. *Lytle v. Jordan*, 2001-NMSC-016, ¶ 47, 130 N.M. 198, 22 P.3d 666 (internal quotation marks and citation omitted). To the contrary, "this Court has expressly rejected the contention that the failure to introduce the testimony of an expert witness constitutes ineffective assistance of counsel per se." *Id.* ¶ 44.

**{37}** For the foregoing reasons, we find that Defendant does not show that Salazar failed to present reasonable arguments for reduced or concurrent sentencing or that Salazar erred by not presenting expert testimony at sentencing. Defendant has not met his burden to show deficient performance at sentencing as required for a claim of ineffective assistance of counsel.

**{38}** We note that Defendant also alleges that "Salazar did not respond [to the State's written memorandum of sentencing], nor did he otherwise file a written sentencing memorandum for [Defendant]." However, Defendant articulates no argument as to how this allegation constitutes error by Salazar nor cites any relevant authority indicating such inaction by counsel as being error. "Issues raised in appellate briefs that are unsupported by cited authority will not be reviewed by us on appeal." *Wilburn v. Stewart*, 1990-NMSC-039, ¶ 18, 110 N.M. 268, 794 P.2d 1197. Without more, Defendant's allegation alone cannot meet his burden to show deficient performance.

## 7. Defendant does not show errors resulting in cumulative prejudice

**{39}** Defendant, citing a Ninth Circuit standard, *see Harris ex rel. Ramseyer v. Wood*, 64 F.3d 1432, 1438 (9th Cir. 1995), argues that the "'cumulative impact of [Salazar's] multiple deficiencies'" may suffice to show prejudice. Defendant argues under this standard that "[i]f the Court finds none of the errors detailed above alone requires reversal, this case [nonetheless] calls out for consideration of cumulative prejudice." To supplement the foregoing allegations of error, Defendant lists eight "[a]dditional errors by Salazar that add to the cumulative effect."

**{40}** Defendant's list of eight additional errors is unaccompanied by any clear or developed arguments establishing actual error, and thus we will not review them. *See Dominguez v. State*, 2015-NMSC-014, ¶ 15, 348 P.3d 183 ("[C]ourts will not [make] arguments on a party's behalf . . . ."); *State v. Guerra*, 2012-NMSC-014, ¶ 21, 278 P.3d 1031 ("[T]he appellate court does not review unclear or undeveloped arguments.").

**{41}** Because Defendant has failed to establish actual error by Salazar, we need not reach the prejudice prong under *Strickland*, which would otherwise be required in an ineffective assistance of counsel claim where a defendant does establish error. *Schoonmaker*, 2008-NMSC-010, ¶ 32. Accordingly, we hold that Defendant has failed to prove his claim of ineffective assistance of counsel.

**{42}** Finally, we note that the foregoing demonstrates that Defendant has not made a prima facie showing to justify remand for an evidentiary hearing. "Absent a prima facie case [of ineffective assistance of counsel], we presume that counsel's performance was reasonable." *State v. Astorga*, 2015-NMSC-007, ¶ 17, 343 P.3d 1245.

## B. Fundamental Error

**{43}** Defendant argues that reversal is required by any of three fundamental errors related to the jury instructions. Specifically, Defendant argues that the jury was not properly instructed as to (1) "the lesser-included offense of second-degree murder for the Alternative to Count 1," (2) Defendant's "status as a juvenile as applied to the 'subjective knowledge' element of depraved-mind murder," and (3) "the depraved-mind mens rea for accomplice liability." Defendant suggests that each of these unpreserved errors resulted in a "miscarriage of justice" or prevented "substantial justice" from being done.

### 1. Standard of review

**{44}** "The propriety of jury instructions given or denied is a mixed question of law and fact" that we review de novo. *State v. Salazar*, 1997-NMSC-044, ¶ 49, 123 N.M. 778, 945 P.2d 996. Because Salazar made no objection regarding the relevant jury instructions, we review for fundamental error. *See State v. Montoya*, 2013-NMSC-020, ¶ 14, 306 P.3d 426; *see* Rule 12-321(B)(2) NMRA (providing as an exception to the preservation rule that an appellate court, in its discretion, may review questions involving fundamental error or fundamental rights).

**{45}** "Under fundamental error review, we will not reverse the jury verdict unless it is necessary to prevent a miscarriage of justice." *Montoya*, 2013-NMSC-020, ¶ 14 (internal quotation marks omitted). "Error that is fundamental, we have said, must go to the foundation of the case or take from the defendant a right which was essential to his defense and which no court could or ought to permit him to waive." *State v. Barber*, 2004-NMSC-019, ¶ 8, 135 N.M. 621, 92 P.3d 633 (internal quotation marks and citation omitted). Under fundamental error analysis regarding jury instructions, "we seek to determine whether a reasonable juror would have been confused or misdirected by the jury instruction." *State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134 (internal quotation marks and citation omitted). "In New Mexico . . . unpreserved error in jury instructions is 'fundamental' when it remains uncorrected, thereby allowing juror confusion to persist." *Id.* ¶ 16.

## 2. The record does not show fundamental error regarding the lesser-included instruction

**{46}**     Defendant asserts that lack of instruction on second-degree murder as a lesser-included offense to depraved-mind murder was fundamental error. Defendant argues that "[l]anguage in the instructions suggested that second-degree murder was only a lesser-included offense under the deliberate-willful murder charge on which the jury did not convict." Defendant points to the jury signing only one verdict form and leaving all others blank as "affirmative proof" under *Benally*, 2001-NMSC-033, ¶ 12, that "the jury was confused by the instructions as a whole."

**{47}**     Facially, the jury instructions do not establish error. As discussed above regarding alleged ineffective assistance of counsel, the jury had the opportunity to consider second-degree murder among its possible verdicts. The jury was instructed on second-degree murder as a lesser-included crime, and the instructions directed the jury to deliberate on second-degree murder only after completing deliberation of first-degree murder. Instruction No. 1 directed the jury to "consider these instructions as a whole" and not to disregard "one instruction or parts of an instruction." Together, these instructions show that the jury was given a full opportunity to consider second-degree murder as a lesser-included crime to first-degree murder.

**{48}**     We recognize that some form of jury confusion could be indicated by the signing of only one verdict form and by the statement of the jury foreperson. However, that statement indicates confusion that pertained to Counts 2, 3, and 4, and Defendant does not show that this confusion applied as well to Count 1. Notably, the foreperson's statement demonstrates the jury's awareness that consideration of second-degree murder (1) would follow consideration of first-degree murder and (2) would precede consideration of Counts 2, 3, and 4. The available evidence does not persuade us that jury confusion infected consideration of Count 1, nor that Defendant's "innocence appears indisputably, or open to such question that it would shock the conscience to permit the conviction to stand." *State v. Cunningham*, 2000-NMSC-009, ¶ 15, 128 N.M. 711, 998 P.2d 176 (internal quotation marks and citation omitted). Thus, Defendant does not show jury confusion constituting error in this regard.

## 3. The record does not show fundamental error regarding lack of a juvenile subjective-knowledge instruction

**{49}**     Defendant asserts fundamental error regarding the lack of a jury instruction that his "status as a juvenile could be considered in deciding the 'subjective knowledge' element of depraved-mind murder." Again, Defendant cites *Brown*, 1996-NMSC-073, as well as science on juvenile-brain development and related caselaw. Defendant again argues that the missing instruction should have included explanation that "juveniles do not act like adults when making conscious and deliberate decisions." Defendant argues that "[t]he failure of the jury to consider [Defendant's] status as a juvenile resulted in a miscarriage of justice and deprived him of substantial justice."

**{50}**     The relevant analysis here mirrors that discussed above for Defendant's claim of ineffective assistance of counsel. First, the district court utilized the appropriate uniform jury instructions, which, as presumed correct statements of law, do not demonstrate error. *See Parish*, 1994-NMSC-073, ¶ 26. Additionally, *Brown* does not avail here to require a subjective-knowledge instruction, and we decline to extend *Brown* to apply to juvenile status. As discussed above, the *Brown* Court held that such an instruction as to intoxication was required where it had been requested and where relevant evidence consistent with the requested instruction had been presented pursuant to the defendant's theory of the case. *Id.* ¶ 34. Here, such an instruction regarding juvenile status was not requested, evidence was not presented concerning Defendant's lack of subjective knowledge, and Defendant's plausible theory of the case did not call for evidence negating his subjective knowledge. Under existing law, the subjective-knowledge jury instruction for juveniles advocated by Defendant is not required; thus, the absence of such instruction cannot constitute error.

**{51}**     For these reasons, Defendant does not show that the lack of the proposed instruction constitutes error.

### 4.     The record does not show fundamental error regarding lack of an instruction regarding accomplice liability

**{52}**     Defendant argues that "[i]t was fundamental error to not include a separate instruction for depraved-mind accomplice liability." Defendant argues that the lack of separate instruction on mens rea for depraved-mind accomplice liability resulted in a "facially confusing" instruction that "collapses the distinction of culpability between first- and second-degree murder."

**{53}**     Defendant's argument here is without merit. The jury was instructed under UJI 14-2822 NMRA (2015), which, as the instruction on accomplice liability adopted by this Court, is presumed to be a "correct statement[] of law." *Wilson*, 1994-NMSC-009, ¶ 5; *see* UJI 14-2822 ("Aiding or abetting; accessory to crime other than attempt and felony murder."). Further, Defendant acknowledges that New Mexico courts have specifically recognized that UJI 14-2822 "incorporate[s] the intent requirement from the underlying crime." *See State v. Jim*, 2014-NMCA-089, ¶ 10, 332 P.3d 870 ("UJI 14-2822 incorporates the intent requirement and correctly states the standard for a finding that a defendant is guilty as an accessory." (internal quotation marks and citation omitted)); *State v. Carrasco*, 1997-NMSC-047, ¶ 7, 124 N.M. 64, 946 P.2d 1075 (same). Defendant does not establish that additional instruction regarding accomplice liability is required under existing law.

**{54}**     Defendant also offers no explanation of his allegation that the given instruction "collapses the distinction of culpability," and we will "not review unclear or undeveloped arguments." *Guerra*, 2012-NMSC-014, ¶ 21.

**{55}**     For these reasons, Defendant does not establish error regarding the lack of the proposed instruction.

**C.     Sufficiency of the Evidence**

**{56}**     Defendant challenges the sufficiency of the evidence to support his conviction for depraved-mind first-degree murder. Consistent with arguments discussed above, Defendant specifically challenges the subjective-knowledge element of depraved-mind murder, arguing that "[b]ecause the State did not prove [Defendant's] brain was sufficiently mature to meet that element, there is insufficient evidence to support the verdict." Defendant argues that the State should have been required to prove beyond a reasonable doubt that Defendant "had subjective knowledge that his act was greatly dangerous to the lives of others" despite his age and mental capacity as a juvenile. (Internal quotation marks and citation omitted.) As above, Defendant argues that this Court should extend *Brown*, 1996-NMSC-073, to find juvenile status to be a mental impairment similar to that of intoxication and thus to find that evidence of juvenile status "may be taken into consideration by the jury when determining the existence of the required mens rea of subjective knowledge." *State v. Dowling*, 2011-NMSC-016, ¶ 22, 150 N.M. 110, 257 P.3d 930 (emphasis and internal quotation marks omitted) (quoting *Brown*, 1996-NMSC-073, ¶ 35). Relying on this proposed requirement, Defendant argues that insufficient evidence "was adduced at trial . . . to satisfy the 'subjective knowledge' element of depraved-mind murder for a juvenile." Defendant does not otherwise contest the sufficiency of the evidence for depraved-mind murder.

**1.     Standard of review**

**{57}**     "Under a sufficiency of evidence analysis, we must determine whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *Reed*, 2005-NMSC-031, ¶ 14 (internal quotation marks and citation omitted). "We must view the evidence in the light most favorable to the State, resolving all conflicts and indulging all permissible inferences in favor of the verdict." *Id.* "It is this Court's duty on review to determine whether *any* rational jury could have found the essential facts to establish each element of the crime beyond a reasonable doubt." *Id.*

**2.     Sufficient evidence supports the jury's finding that Defendant possessed subjective knowledge that his conduct was greatly dangerous to the lives of others**

**{58}**     In this case, to find Defendant guilty of depraved-mind first-degree murder, the jury was instructed that it must find:

>     1.     The defendant discharged a firearm into a house multiple times;
>
>     2.     The defendant's act caused the death of Jaydon Chavez-Silver;
>
>     3.     The act of the defendant was greatly dangerous to the lives of others, indicating a depraved mind without regard for human life;

4. *The defendant knew that his act was greatly dangerous to the lives of others*;

5. This happened in New Mexico on or about the 26th day of June, 2015.

(Emphasis added.) As mentioned above, Defendant's challenge focuses on the instruction's fourth paragraph, the subjective-knowledge element.

**{59}** Because we decline to extend *Brown* to apply to juvenile status, the State was not "required to offer evidence a juvenile's brain was sufficiently mature to prove the 'subjective knowledge' element of depraved-mind murder," contrary to Defendant's argument. Accordingly, we analyze the sufficiency of the evidence for the subjective-knowledge element under existing law and under the instructions as given to the jury.

**{60}** Under New Mexico jurisprudence,

> a person guilty of depraved mind murder may not intend the specific result of death, but is . . . culpable because that person intentionally commits "an act imminently dangerous to others" or does so "with the subjective knowledge that the act creates a very high degree of risk to the lives of others, indicating a depraved mind regardless of human life."

*Reed*, 2005-NMSC-031, ¶ 25 (quoting *Brown*, 1996-NMSC-073, ¶ 25). Such a defendant "must subjectively intend to commit an act that has a great likelihood of resulting in death." *Id.* We have also said that proof of a depraved-murder defendant's subjective knowledge

> serves to establish that the defendant's underlying dangerous conduct was intentional and that his behavior exposed victims to mortal danger. Only a defendant who acts with such conscious disregard for the welfare of others warrants a depraved[-]mind murder conviction. Thus, subjective knowledge of the risk introduced by the defendant serves as proof that the defendant acted with a depraved mind with utter disregard for human life, thereby justifying imposition of a first[-]degree murder conviction.

*Dowling*, 2011-NMSC-016, ¶ 21 (ellipsis, internal quotation marks and citation omitted).

**{61}** We recognized further in *Dowling* that such knowledge may be inferred from substantial evidence both "in the form of a defendant's actions" and where an "act arises out of personal animus" that "establish[es] the presence of a depraved mind." *Id.* ¶¶ 23-24. The former has been found in a "late-night shooting spree to avenge [a] grudge" despite the defendants' claimed intent merely to puncture carnival trucks' tires. *Id.* ¶ 23 (citing *State v. McCrary*, 1984-NMSC-005, ¶¶ 9, 11, 100 N.M. 671, 675 P.2d 120). The latter has been found where a defendant "fired shots into a group of rival gang members after the two groups engaged in an argument," *id.* ¶ 24 (citing *Trujillo*,

2002-NMSC-005, ¶ 3), and where a defendant "fired into a crowded bar after being maced and ejected from the bar by the doorman," *id.* (citing *State v. Sena*, 1983-NMSC-005, ¶ 2, 99 N.M. 272, 657 P.2d 128).

**{62}** In this case, substantial evidence of both forms was presented to the jury. The jury heard testimony from multiple witnesses that Defendant and others discussed going to the house party to get revenge on a particular inhabitant for a friend being beaten at a previous party; that Defendant and others approached the house on foot, ascertained that people were inside the house, then returned to the vehicle; and that Defendant and Gonzales, the only occupants of the car who had guns with them, fired multiple gunshots at the house.

**{63}** Based on the foregoing substantial evidence, a reasonable jury could infer that Defendant acted with subjective knowledge that his act was greatly dangerous to the lives of others.

## D.    Double Jeopardy

**{64}** Defendant argues that Counts 2, 3, and 4 should have been dismissed on double-jeopardy grounds "after the jury failed to sign the verdict forms as to those counts under the mistaken belief they did not have to do so." Defendant argues that the district court abused its discretion by declaring a mistrial on those counts rather than dismissing them where there was "incurable ambiguity regarding the jury's verdict." *See State v. Phillips*, 2017-NMSC-019, ¶ 18, 396 P.3d 153 (dismissing with prejudice where "there was no clear record of the jury's decision at the time of its discharge"). Defendant seeks dismissal so that he cannot be retried on those counts.

**{65}** We do not reach Defendant's arguments, however, since the statute of limitations has run on Counts 2, 3, and 4, thus rendering the issue moot. "As a general rule, this Court does not decide moot cases." *Gunaji v. Macias*, 2001-NMSC-028, ¶ 9, 130 N.M. 734, 31 P.3d 1008. "A case will be dismissed for mootness if no actual controversy exists." *City of Las Cruces v. El Paso Elec. Co.*, 1998-NMSC-006, ¶ 16, 124 N.M. 640, 954 P.2d 72. Further, we do not find this matter to "present issues of substantial public interest or which are capable of repetition yet evade review" that would constitute an exception to mootness. *Gunaji*, 2001-NMSC-028, ¶ 10.

**{66}** As submitted to the jury, Counts 2, 3, and 4 each constitute a second-degree felony. *See* NMSA 1978, § 30-3-8(A), (B) (1993); NMSA 1978, § 30-28-2(B)(1) (1979). Under our statute of limitations, a second-degree felony must be prosecuted "within six years from the time the crime was committed." NMSA 1978, § 30-1-8(A) (2009).

**{67}** The underlying events of the crimes charged took place on June 26, 2015, and thus potential reprosecution on Counts 2, 3, and 4 expired on June 26, 2021. Because the window for reprosecution of Counts 2, 3, and 4 has closed, the issue raised is moot. Additionally, no exception to mootness that might lead us to review an otherwise moot case applies. Thus, we dismiss Defendant's double-jeopardy claim here.

**III. CONCLUSION**

**{68}** For the reasons stated, we affirm the jury verdict on depraved-mind murder, and we dismiss Defendant's claim regarding Counts 2, 3, and 4 as moot.

**{69} IT IS SO ORDERED.**

**C. SHANNON BACON, Justice**

**WE CONCUR:**

**MICHAEL E. VIGIL, Chief Justice**

**DAVID K. THOMSON, Justice**

**JULIE J. VARGAS, Justice**